## No. 2371.

## THE CONTINENTAL NATIONAL BANK OF NEW YORK *v.* B. F. WEEMS, RECEIVER.

1. BANKS—TRUSTS—DEBTOR AND CREDITOR.—In the course of dealings between a New York and Texas bank, the New York bank was in the habit of discounting notes for the latter, and of forwarding the same, on maturity, to the latter "for collection and returns," with the understanding that the proceeds of such discount notes should be preserved by the Texas bank as the property of the New York bank, and should be returned to it as such. Such being the habit of business between the banks, the Texas bank received notes from its New York bank correspondent "for collection and return of proceeds," *held:*

(1) The Texas bank became as to such collections, when made by it, a trustee for the New York bank.

(2) After their collection was made the relation of creditor and debtor as between the banks did not exist. The Texas bank had no authority to credit on its books the amount collected, but was legally bound to remit the money to its correspondent.

2. SAME.—The trust fund thus collected was credited by the Texas bank to its New York correspondent and mingled with other money of the Texas bank; thereafter, and before an adjustment of accounts, the Texas bank became insolvent, and was placed in the hands of a receiver. *Held*, that the trust attached to whatever money remained, when the receiver was appointed, in the bank vaults.

3. SAME.—The Texas bank, after receiving some notes from its New York correspondent "for collection and returns," procured renewals of the same, after which the Texas bank endorsed them and deposited them as collaterals with other banking houses in New York, to which they were paid, and were by them applied to the debts due them from the Texas bank. *Held*, that the New York bank, as to the amount thus collected on said notes, had no lien on the general assets of the Texas bank in the receiver's hands. One who receives the money of another in a fiduciary capacity and expends it in paying his own debts, does not thereby create a lien on the mass of his property for its repayment. The trust estate must ordinarily be clearly traced into specific property in order that the *cestui que trust* may be entitled either to the specific property or to a lien thereon.

4. SAME.—When a trustee mingles trust money with his own, whatever he pays out afterwards to others, so long as he retains enough money to cover the trust fund, it will be presumed that he has paid out from his own funds.

6. CASES REVIEWED.—Brocchus v. Morgan (Tenn.), 5 Central Law Journal, 53; National Bank v. Insurance Company, 104 United States, 54; Peak v. Ellicott, 30 Kansas, 156; People v. The Bank, 96 New York, 32; Hanson v. Smith, 83 Missouri, 210; Strother v. Cooley, 88 Missouri, 514; McLeod v. Evans, 66 Wisconsin, 401, reviewed.

7. BANKER'S LIEN.—The lien of a banker on the funds of his customer in his hands for his indebtedness is the result of a contract either express or implied. A bank which receives notes sent to it for discount, and to have the amount placed to the credit of its correspondent, which refuses to discount the paper, but which pays drafts drawn in the belief that the notes had been discounted, has no lien upon the notes for its reimbursement.

8. SAME.—In such a case the bank, in settlement with a receiver of its correspondent, is chargeable with money collected on the paper thus sent for discount, and with the value of so much of it as remained unpaid to be set off by the amount of the drafts drawn upon it by its correspondent after the notes were forwarded for discount.

9. PRACTICE—RECONVENTION.—A receiver of an insolvent corporation may reconvene against one who intervenes in a proceeding to which he is a party, and ask an adjudication of all the rights of the corporation grow-

ing out of a continued course of business with the intervenor under one judicial agreement. The fact that other suits were pending in another jurisdiction involving some of the matters in dispute, and to which the the receiver was a party, when pleaded in abatement to the plea in re convention, is not an answer to it.

APPEAL from Harris. Tried below before the Hon. James Masterson.

*Goldthwaite & Ewing,* for appellant: Under a restrictive indorsement "for collection and returns," the title to the paper and its proceeds remains in the indorser, the indorsee being a mere collecting agent, and where a banker, as such collecting agent, has mixed the money of his principal in a common mass with his own, the first drawings out are conclusively presumed to be of his own money, and the remnant that of his principal; and on the insolvency of the agent the principal is entitled to be paid his money in full to the extent that it is traced to the increase or benefit of the defaulting agent's estate, the principal, in such cases, having a charge upon the whole estate to the extent of his interest.

That a restrictive indorsement "for collection and returns" constitutes the avails of the note a trust fund, see Sweeney v. Easter, 1 Wallace, 172; Marine Bank v. Fulton Bank, 2 Wallace, 253; Colebrooke's Collateral Securities, 6; 1 Daniel's Negotiable Instruments, section 336; Levi v. National Bank of Missouri, 7 Central Law Journal, 249; same case, 5 Dillon, 241; Scott v. Ocean Bank, 23 New York, 289; Bank of Chicago v. Rens. Co. Bank, 3 Federal Reporter, 263.

That the principal is entitled to recover in full the money traced to the increase or benefit of the derelict agent's estate, see Peak v. Ellicott, Kansas Supreme Court, 1883, 3 American and English Corporation Cases, 262, and cases therein cited; same case, 30 Kansas, 156; McLeod v. Evans, Wisconsin Supreme Court, 1886, 22 Reporter, No. 7, 221; same case, 13 Rhodes's Journal of Banking, No. 7, 515; same case, 28 Northwestern Reporter, 173; Harrison v. Smith, 83 Missouri, 210; Stoller v. Coates, 4 Western Reporter, Missouri, 600; People v. Bank of Rochester, 96 New York, 32; Brocchus v. Morgan, 5 Central Law Journal, Tennessee, 53; Knatchbull v. Hallett, Law Reports, 13 Chancery Division, 696; Leading Articles, 5 Central Law Journal, 51, 75.

Parol evidence of course of dealing is incompetent to vary

the legal effect of the restrictive endorsement; but if *aliter* the evidence shows that by special agreement between plaintiff and the City Bank the latter was to preserve for plaintiff the specific proceeds of collections, which should remain the property of plaintiff, and be returned to it as such unless and only unless the notes were paid, by money provided for the purpose, in New York, on maturity, and that in the present instance no money was provided and the notes were not paid in New York or elsewhere.

That parol evidence is incompetent for the purpose stated, see Mechanic's Bank v. Valley Packing Company, 4 Missouri Ap., 200–210; Leary v. Blanchard, 48 Maine, 269; 33 Georgia, 49; 29 Indiana, 271.

That the agreement as to the admitted facts is conclusive, see Pool v. Wedemeyer, 56 Texas, 299.

A banker has a lien on all funds and paper securities in his hands for his general balance on account with his customer, unless there is an agreement to the contrary, and the rule extends to correspondent banks.   Bank of Metropolis v. New England Bank, 1 Howard, 234; same case, 6 Howard, 212; Wilson v. Smith, 3 Howard, 763; Wharton's Agency and Agents, sec. 688; Boone's Law of Corporations, sec. 221; Colebrook's Collateral securities, page 82, sec. 61; Kelly v. Phelan, 5 Dillon, 228–235; same case, 3 Myer's Federal Decisions, sec. 191; Dumont v. Fry. 13 Federal Reporter, 423; In re European Bank, Law Reports, 8 Chancery, 41; Scott v. Franklin, 15 East., 428; Ford v. Thornton, 3 Leigh, Virginia, 753.

*Hutcheson, Carrington & Sears,* for appellee: The evidence supports the finding of the court below, that the account between the City Bank and the Continental Bank, including the items composing this eight thousand four hundred and eighty-eight dollars and forty-eight cents, was a simple debtor and creditor account, and that there was no such trust relation between them, and no such trust character attaching to appellant's claim as to give it a higher standing than the claims of the general creditors of the City Bank.   Morse on Banks, etc., second edition, pp. 384, 385; Marine Bank v. Rushmore, 28 Ill., 463; Bank v. Chandler, 37 Ill., 525; People v. Merch. and Mech. Bank, 78 N. Y., 269; Marine Bank v. Fulton, 2 Wall., 252, 256.

This eight thousand four hundred and eighty-eight dollars and forty-eight cents is in no event a preferred claim against the

assets of the City Bank, in the hands of the receiver, because none of it ever came into his possession.   It passed into the general funds of the bank, before its failure, was mingled with them, and used indiscriminately by it in its current business. Morse on Banks and Bankers, pp. 384, 385; Perry on Trusts, sections 837, 841; Chapman v. Allen, 15 Texas, 283; People v. Rochester Bank on Pet. Utica Nat. Bank, 3 Am. and Eng. Corp. Cases, pp. 241, 242; People v. Merch. and Mech. Bank on Pet. Chem. Nat. Bank, 78 N. Y., 269; Butler v. Sprague, 66 N. Y., 392, 395; Ferris v. Van Vechten, 73 N. Y., 113, 125; Cook v. Tullis, 18 Wall., 332; Bank v. Russell, 2 Dillon (U. S. C. Ct.), 215; Bump on Bankruptcy, 539, 540; Brocchus v. Morgan, Sup. Ct. Tennessee, in Cent. L. J., July 20, 1887; Thompson v. Perkins, 3 Mass., 232.

The finding of the court that the facts negatived expressly the passing to appellant of any title to, or the existence of any lien upon, these notes, on the part of the Continental Bank, except such as might be adduced from the implied agreement of the parties, is supported by the evidence.   The banker's lien can not attach itself to paper thus remaining in the banker's hands, after he had expressly refused to discount it, or loan money on it. Morse on Banks and Bankers, pp. 43, 44, and English cases cited on page 44; Lucas v. Dorrein, 7 Taunt., 279; Vanderzee v. Willis, 3 Brown C. C., 21; in re Medewe, 26 Beav., 588; Van Blarcom v. Broadway Bank, 37 N. Y., 540; Randel v. Brown 2 How., 406, 425; Jarvis v. Rogers, 15 Mass., 389.

On the action of the court in overruling the plea in abatement, they cited: Stanton v. Embrey, 93 United States, 548, 554, and cases cited on page 554; Cook v. Burnley, 11 Wallace, 668; Griffin v. Chubb, 16 Texas, 221; Langham v. Thomason, 5 Texas, 130.

GAINES, ASSOCIATE JUSTICE.   On the nineteenth day of December, 1885, William R. Baker, as president of the City Bank of Houston, and one of its largest stockholders, and the Houston Insurance Company, another stockholder, filed a petition in the district court of Harris county against certain of its creditors and other stockholders, alleging its insolvency, and praying for the appointment of a receiver and for the collection and distribution of its assets among the holders of claims against it according to their respective priorities; and on the same day appellee Weems was appointed receiver in accordance with the prayer of the petition, and has since been acting under direction of the

court in that capacity. By a course of dealing, kept up during a series of years by the insolvent corporation and the Continental National Bank of New York, the New York bank had discounted the paper of the Houston bank, and just before it fell due had fowarded it to the latter "for collection and returns."

Immediately before its failure, the Houston bank had received a large amount of paper so discounted for it by the New York bank, and had collected it in part and placed the proceeds to the credit of the latter. For others of their notes the Houston bank had received renewals, which were discounted by other banks in New York, and the proceeds applied to the payment of its debts. On the third day of September, 1886, appellant intervened in the original suit, claiming to be a creditor of the City Bank of Houston, and claiming a priority of payment, out of the assets in the hands of the receiver, of the amount due to it by reason of the collection and appropriation of the proceeds of the notes sent by it to the Houston bank. The receiver resisted the claim, denying complainant's right to priority, and answered further that the City Bank before its failure had sent to the Continental Bank several promissory notes for sums amounting in the aggregate to over twenty thousand dollars, to be discounted; that the latter refused to discount the notes, but retained them without authority, and had then collected some of them and were proceeding to collect the others. To this counter claim complainant replied, setting up a lien upon the notes to secure the payment of a general balance due it from the City Bank at the time of its failure. Upon the trial of the issue so presented the court gave judgment, disallowing the claim of priority, but allowing the claim of the Continental Bank as a general creditor, and awarding a recovery against it in favor of the receiver for the full amount of the notes claimed by him to have been converted by it, less about five thousand dollars paid upon drafts of the City Bank upon it after the paper went into its hands. The judgment further provided that the Continental Bank should deliver up the notes or their proceeds to the receiver within thirty days, and that, upon its failure to do so, the judgment against it should be charged against its dividends, and that the receiver should have execution against it for the balance. From this decree the Continental National Bank has brought this appeal.

The first assignment is in substance, that the court erred in deciding that appellant was not entitled to have the amount of the notes sent by it to the City Bank for collection paid in full

from the assets in the hands of the receiver. The evidence shows that some of these notes, amounting to about five thousand dollars, were collected by the City Bank and were mingled with its funds after being credited to appellant, and that others were renewed, and the renewed paper discounted in New York for account of the City Bank—the proceeds going to pay its debts. The first question to be determined, is whether under the agrement and the course of dealing between the two, the collecting bank is to be decreed the trustee of the funds received by it upon the notes which were paid and of the renewed obligations which were taken in lieu of those which were not paid. Before the trial an agreed statement of facts was signed by the counsel representing the parties and filed among the papers in the case. The agreement appended to the statement is as follows: "The matters and facts set forth in the foregoing eigh: pages are for the purposes of the trial of the above entitled cause admitted to be true and correct and may be read in evidence upon the trial of said cause, the parties thereto reserving the right to introduce such additional evidence not inconsistent with the foregoing as may be desired." The agreed statement contains the following paragraph: "That in the course of dealings between the City Bank and complainant, the latter was in the habit of discounting notes for the City Bank and of forwarding the same on maturity to the City Bank for collection and return, with an understanding that the proceeds of such discount notes should be preserved by said City Bank as the property of the complainant and returned to it as such." The agreement further shows that the notes last referred to were received by the City Bank "for collection and return of proceeds."

We think these facts settle the question of trust in the affimative. If the securities had been sent for collection merely, the proceeds to be credited to the New York bank, it is clear that after their collection, the relation of debtor and creditor would have subsisted, and the latter would have no claim upon the funds. But by the understanding between the banks and the actual transaction between the parties as shown by the agreed evidence, a special agency was created, and the city bank had no authority to hold and credit the proceeds of the notes, but was bound to remit them immediately to its correspondent. This principle was clearly recognized by this court in the case of the City Bank of Sherman v. Weiss, 67 Texas, 331, and is

sustained by the great weight of authority as appears from the citations in the opinion in that case.

But it is insisted by counsel for appellee that there is other evidence in the record not inconsistent with the agreement which shows that the relation of debtor and creditor and not that of trustee and *cestui que trust* was created by the transaction. We think, however, that any evidence to show this fact in the face of the explicit statement in the admitted proof would be inconsistent with the agreement, and should have been disregarded by the court, whether objected to or not. But we do not regard the evidence relied on as being in conflict with that in the agreed statement. The receiver who was cashier of the insolvent bank for many years previous to its failure, testified to the effect, that in previous transactions of a like character it had been the habit of his bank to collect and credit the proceeds of the discount notes sent to it for collection. But appellant showed on the other hand, by the testimony of its president, that in discounting paper for its customers at a distance, it was the custom to charge interest after the maturity of the paper to allow for the transmission to it of the proceeds after collection as well as exchange on the amount, and that in order to avoid these charges the City Bank agreed to keep with the New York Bank sufficient funds to meet the discounts as they matured, and that in all previous transactions this promise had been complied with. As long as the City Bank kept with its correspondent a sufficient sum to cover the amount of the discounted paper as it fell due, it had the right to the proceeds when collected, for it had then virtually taken up the securities. We do not see how the conclusion can be drawn from this, that it was entitled to credit its collections when it had no funds in the hands of the New York Bank to make good its account, as was shown to be the fact in this particular transaction.

Had appellant permitted this, it might as well have extended credit to the Houston bank in the first instance without security, which the testimony shows it was very careful to avoid. It may be inferred from the receiver's testimony that his bank did not always have funds with its correspondent to cover its discounts at maturity. But he also testified that in every instance its account was immediately made good. As this was all the appellant could have legally demanded, it is not seen that the fact of his crediting the proceeds of the discounted notes returned for collection in such cases, could have affected

appellant's right as to future cases, under their express agreement, or under the restrictive endorsement made upon the notes in the particular instance now under consideration.

We think therefore, that when the City Bank collected these last notes, it acted in a fiduciary capacity, and received the proceeds in trust for the Continental National Bank, and that it was its duty to remit them to the latter. This brings us to the further question, whether under the circumstances of this case they were divested of their character of trust funds when they were placed by the collecting bank in its vaults and there mingled with its other moneys. It is a principle of equity long recognized and applied, that when one who is entrusted with the money of another, invests it in property, the *cestui que trust* may follow the funds, and fixing upon the property the character of the original trust, may claim it as his own. (Ryall v. Rolle, 1 Atk., 172; Scott v. Imman, 4 Wells, 400; Burdett v Willett, 2 Vernon, 638.) But in an early case it was said: "But if the factor have money it shall be looked upon as the factor's estate and must first answer the debt of a superior creditor  *  *  *  for in regard that money has no ear mark, equity can not follow that in behalf of him that employed the factor." (Whitcombe v. Jacob, 1 Sack, 160.) The idea thus suggested seems long to have prevailed in the courts of England. But at a later day a different doctrine has been established in these courts, (Taylor v. Plumer, 3 Mau. & S., 562; Pennell v. Diffill, 4 M., D. & D., 372; Knatchbull v. Hallett, L. R., 13 Ch. Div., 696), and has generally been applied in the courts of last resort in this country in the more recent cases. (Nat. Bank v. Ins. Co., 104 U. S., 54; Brocchus v. Morgan, Tenn., 5 Cent. Law J., 53; People v. Rochester Bank, 96 N. Y., 32; Harrison v. Smith, 83 Mo., 210; Stoller v. Coates, 88 Mo., 514; Peak v. Ellicott, 30 Kan., 156.)

The rule thus followed in the cases last cited we think founded upon the better reason. Where the trustee kept the fund separate, and the original money was capable of being identified, there never was any question. The dictum above quoted is not understood as having been applied to such a case. It is where the trustee has mingled the trust money with the mass of his other funds that the difficulty arises. It may be that when the entire mass is once paid away, the right to claim a trust in any money or property is forever lost. But if, as in the present case, throughout all the trustee's dealings with the funds so mingled

together, he keeps on hand a sufficient sum to cover the amount of the trust money, we think it capable of demonstration that the trust should attach to the balance that is found to remain in his hands. Let us take the case before us for an illustration. It is shown by the evidence that after the bank received the money, amounting to about five thousand dollars, its cash assets were never reduced below the sum of six thousand dollars until they went into the receiver's hands. Even admitting that, in course of its transactions, this identical money was paid out by the bank to its uttermost farthing, yet we know that every dollar so expended left its representative and exact equivalent in the vault from which it was taken; and that, when again the money so left was expended, it left in turn its equivalent behind it. We see, therefore, that whatever changes may have taken place in the funds from the receipts and expenditures of the bank, the balance left at the date of its failure was the result of the proceeds of the notes to the extent to which such balance was thereby increased; and that the cash which went into the hands of the receiver should be deemed the representative of those proceeds and impressed with the trust character which pertained to them. The equity would have been no stronger if the City Bank had used appellant's money in the purchase of bonds or other securities, which were found in its vaults and identified, and if appellant were now seeking to recover the securities so bought.

For the reasons given we are clearly of the opinion that appellant was entitled to priority of payment for the proceeds of the notes collected by the City Bank. But we think that the claim for full payment of the notes renewed and rediscounted by it, stands upon a very different ground. The agreed evidence shows that these renewed obligations were indorsed by the City Bank and deposited as collateral with banking houses in the city of New York, and were paid to the holders either in whole or in part. As to the one which was only partially paid, the agreement recites "that said renewal note to the amount of. twelve hundred and fifty dollars went to pay the debt of said City Bank, and benefited its estate accordingly." As to the other two, the language in reference to the disposal of the proceeds is a little different, but we presume it means the same thing. We therefore deduce from the admitted facts that with the proceeds of the notes now under consideration obligations of the insolvent bank were discharged, and that no other bene-

fit accrued to its estate. Now then, the question is, has the appellant a lien upon the general assets in the hands of the receiver for the proceeds so appropriated? We think not. To hold the affirmative of this proposition would be to declare that every one who receives the money of another in a fiduciary capacity and expends it in the payment of his own debts, thereby creates a lien upon his entire estate in favor of the owner of the money so expended. But this is clearly contrary to the doctrine of constructive trusts. The true rule is that the trust estate must be clearly traced into other specific property, in order that the *cestui que trust* may claim either the property itself or a lien upon it. This is the doctrine uniformly applied in the older cases, and laid down by the text books upon the law of trusts. (Perry v. Phelps, 4 Ves., 107; Lewis v. Madocks, 17 Ves., 48; Denton v. Davis, 14 Ves., 499; Taylor v. Plumer, 3 Mau. & S., 562; Pennell v. Duffill, 4 M., D. & D., 372; Knatchbull v. Hallett, 13 Chan. Div., 696; Pharis v. Leachman, 20 Ala., 662; Noble v. Andrews, 37 Conn., 346; Roberts v. Brown, 1 Harvey, 57; 2 Perry on Trusts, sec. 835, et seq.; 2 Story's Eq. Jur., sec. 1258; 2 Pomeroy's Eq., sec. 1051.)

We have a line of decisions in our own court which, we think, have an important bearing upon the question before us. It is held that the wife may follow through all its mutations the proceeds, in the hands of the husband, of her separate estate converted by him, and claim the property into which they have been invested. But at the same time it has been repeatedly decided that, to enable her to do so, the proceeds must be clearly and distinctly traced. (Rose v. Houston, 11 Texas, 324; Chapman v. Allen, 15 Texas, 278; Love v. Robertson, 7 Texas, 6; King v. Gilleland, 60 Texas, 271; Glasscock v. Hamilton, 62 Texas, 143.) This results from an application of the doctrine of constructive trusts to the separate property of the wife in the hands of the husband. The principal, where money has been misapplied by his agent, occupies with us no higher ground than the married woman whose husband has misappropriated hers; and our courts have never held that the wife, in the latter case, is entitled to priority of payment out of the husband's estate as against his general creditors. This is shown by the case of Richardson v. Hutchins, 68 Texas, 81, in which the wife recovered a large judgment against her husband's executor for her separate property, used by him in the payment of his debts, but recovered only as a general creditor.

The appellant's claim for priority as to the funds which went into the vaults of the bank, also has a materially different effect upon the rights of other creditors, from the claim we now have under consideration. As to the former, we have attempted to show that it clearly appears that the direct equivalent and substitute for the proceeds of the notes collected by the City Bank went into the hands of the receiver. The authorities also hold that where the trustee mingles the trust money with his own, whenever he pays out (leaving enough to cover the trust fund), he is presumed to pay out his own money. (Knatchbull v. Hallett, supra; National Bank v. Insurance Company, supra.) Upon whichsoever ground we put it, the proceeds of the collected notes are traced into the bank vault and their specific substitute found there and distinctly pointed out; and it works no injury to the general creditors to require the receiver to pay back money which never belonged to the bank. On the other hand, to allow a like priority for payment for the conversion of renewed notes would be to diminish the assets which the insolvent bank both legally and equitably owed, to repay trust money which merely went to pay its debts. These payments may have gone to benefit its estate in one sense, but they did not contribute to swell the assets.

The decisions relied upon    appellant's counsel to support their position upon this question can hardly be deemed applicable to the facts of the present case. It remains to notice them briefly.

The case of Brocchus v. Morgan and of the National Bank v. The Insurance Company, supra, sustain appellant's claim of property for the proceeds of the collected notes but are not authority upon the present question. In Peak v. Ellicott, 30 Kansas, 156; People v. The Bank, 96 New York, 32; Harrison v. Smith, 88 Missouri, 210; Stoller v. Coates, 88 Missouri, 514, the trust funds were traced directly into the hands of the unfaithful agents and went to increase their assets, if they did not appear, as in the case of the renewed notes now under discussion, to have been applied merely to the payment of debts. So also in McLeod v. Evans, 66 Wisconsin, 401. There the draft which was held to have been received in trust, was wrongfully sent by the banker to a correspondent, was collected by the latter and its proceeds drawn out by the fiduciary on his own checks. In these cases, the doctrine has been so extended as to give priority from the general assets of the bank, on the ground that

these assets have been swelled by the trust funds, although it was not shown that a sufficient amount of cash remained on hand to cover the latter. With the greatest deference to the courts, who decided these cases, we are constrained to differ with them upon this point and to hold that in order to fix the trust upon any part of the assets the particular property into which the trust may have been converted must be pointed out with at least practical definiteness and certainty.

Appellant next complains of the action of the court below in charging it with the notes sent to it by the City Bank for dis·count. The facts in regard to this matter are in brief: The City Bank sent the notes to the appellant to be discounted and to have the proceeds placed to its credit according to a previous course of dealing between them. Appellant refused to discount the paper, and so notified its correspondent, but before the note was received by the latter, not doubting that the paper would be discounted, it drew upon appellant to the amount of about five thousand dollars. Appellant paid these drafts, relying upon the notes for reimbursement. It is now contended that it has a lien upon this paper for the payment not only of the five thousand dollars so paid, but also for its general balance on account against its correspondent. This proposition can not be maintained. It is frequently said that a banker has a lien upon the funds in his hands for the indebtedness of his custom·ers; and it is argued that the rule applies unless there is an agrement to the contrary. But we understand the rule to be, that in order to give such lien, there must be a contract for that purpose, either express or implied. "The credit must be given on the credit of the securities or valuables either in possession or expectancy. (Russell v. Haddock, 3 Gilm., 233.) This is the extent of the banker's lien." (Fourth Nat. Bank v. City Nat. Bank, 68 Ill., 398. See also James v. Rogers, 15 Mass., 389; Lucas v. Downer, 7 Taunton, 279.) In the case last cited a bond was presented to a banker by his customer as collateral for a loan, which the banker declined to accept, and it was casu·ally left with him. It was held he had no lien upon it. So in this case the appellant having refused the paper, had no right to hold it and should have returned it. Having failed to do so, it has no lien except for the amount of the drafts paid, after the paper was received.

We think, however, the court erred in rendering judgment against appellant for the full value of the notes, although it

decreed that the judgment might be satisfied by turning over to the receiver such as had not been collected together with the proceeds of those which had been paid. A proper judgment would have been to charge appellant in the account with the moneys collected upon the paper and with the value of so much of it as remained unpaid, to be set off by the amount of the drafts drawn upon the appellant by the City Bank after the notes were forwarded for discount.

We think what we have said sufficient to dispose of the leading propositions in the case. The other questions presented relate mainly to the right of the receiver to reconvene in the action brought against him in the court below. We are of opinion that although this proceeding was an intervention in another suit and was a mere outgrowth of the original action, yet appellant having sought the jurisdiction of the court to establish equities against the estate in the hands of the receiver, it was proper to allow the latter to reconvene and set up all the rights of the insolvent corporation growing out of a continued course of dealing under one general agreement. It was not error for the court to adjust the equities between the two banks and to state the amount and to give judgment for any balance found in favor of the insolvent bank. The fact of other suits pending in another tribunal upon some of the notes, to which the receiver was a party and in which the title was being contested, pleaded in abatement of the plea in reconvention, was not an answer to it. All parties at interest being before the court, this case was a proper proceeding in which to settle all matters in dispute between appellant and the receiver growing out of the transactions between the two banks. Upon the rendition of a judgment against the complainant for the value of the notes in this suit, its title to them would become perfect and there would exist no obstacle to the prosecution of the suits for their collection which it had already instituted.

For the errors pointed out, the judgment will be reversed and the cause remanded, with instructions to the lower court to hear evidence as to the value of the notes sent to appellant for discount and not discounted at the date of the filing of the appellee's plea in reconvention, and to charge appellant with such value instead of the face value as in the former judgment, to allow appellant's claim for priority of payment out of the assets in the receiver's hands to the amount of the notes sent to the City Bank for collection and collected by it, but not for

those renewed and rediscounted, and in all other respects to state the account as before and to give judgment accordingly.

*Reversed and remanded.*

Opinion delivered January 17, 1888.