### W. W. HOSKINS ET AL. v. J. S. DOUGHERTY.

Decided May 23, 1902.

1.—Contract to Sell Land—Forfeit—Specific Performance.

Where defendants contracted to sell certain land to plaintiff and deliver sufficient deeds thereto within sixty days, putting up a sum of money to be forfeited to plaintiff if they failed to comply with the contract within sixty days, and upon such failure plaintiff claimed the forfeit, he was not entitled to also have specific performance of the contract decreed.

**2.—Same—Parties.**

Where a contract to convey land was made with plaintiff alone, and bound defendants to execute deeds to such persons as plaintiff might designate, he was entitled to maintain an action to enforce its performance although he had, after its execution, contracted to others the larger part of his interest therein.

**3.—Same—Deposit in Bank as Forfeit.**

Plaintiff agreed to deposit $10,000 in a certain bank to be paid to defendants as a forfeit if he failed to comply with his part of the contract, and as a part of the purchase price if he did so comply. The president of the bank, who was solvent and had that much money on deposit in the bank, agreed to lend it to plaintiff's associate and agent, and notified defendants that the deposit was made, but no entry in respect to the matter was made on the books of the bank. Held, that this was a sufficient compliance on plaintiff's part, as the fund was thus made a special deposit, held in trust by the bank for account of the contract.

**4.—Same—Pleadings—Relief Not Limited—Prayer.**

An objection that plaintiff is not entitled to recover the $10,000 as liquidated damages in lieu of specific performance because he sued for the same as for a delay for sixty days only, is not tenable where the petition sets out the facts fully, and in addition to the prayer for recovery as stated, prays for general relief.

**5.—Same—Withdrawing Forfeit—Refusal of Tender.**

Plaintiff's withdrawal of the forfeit from the bank after defendants had breached the contract and notified him that they would not convey the land, did not defeat his right to recover the stipulated damages, nor did his refusal to receive the money where it was tendered him as liquidated damages and also as a discharge of the contract.

**6.—Same—Waiver of Objections to Deed.**

Where plaintiff made no objection to the sufficiency of the deed offered him and ignored the tender of it altogether, he could not complain that defendants had not tendered a sufficient deed.

Appeal from Harris. Tried below before Hon. Wm. H. Wilson.

*Hutcheson, Campbell & Hutcheson* and *Lewis R. Bryan,* for appellant.

*Hogg, Robertson & Hogg,* for appellees.

GARRETT, CHIEF JUSTICE.—This was an action for specific performance of a contract to convey land as well as for the recovery of damages stipulated for its breach, brought by J. S. Dougherty against W. W. Hoskins and others. The contention of the plaintiff was that he was entitled both to recover of the defendants the amount of damages stipulated in the contract for their failure to comply with its terms within sixty days and to have specific performance thereof by the conveyance of the land. From a judgment of the court below in favor of the plaintiff for the sum of $10,000, the amount of damages stipulated in the contract to be paid by the defendants in case of its breach by them, and refusing the prayer of the plaintiff for specific performance, both parties have appealed. On October 23, 1900, W. W. Hoskins for himself and as agent for his codefendants entered into a written contract with the plaintiff, J. S. Dougherty, which is set out in full on pages 60 to 67 of the record. By said contract the defendants obligated themselves to

convey or cause to be conveyed to the plaintiff, or anyone he should designate, by general warranty deed, title to about 40,000 acres of land known as the Hoskins pasture or Montevideo ranch, situated in Brazoria County, for the consideration of $3 per acre, provided that the plaintiff deposited, or caused to be deposited, in the banking house of T. W. House, of Houston, Texas, the sum of $10,000 on or before the 1st day of January, 1901, and caused said bank to notify the defendants of said deposit not later than said date. The time in which the said deposit should be made and notice given was subsequently extended to the 8th day of April, 1901. Upon receiving notice from said bank that the said $10,000 had been deposited, the defendants agreed to execute and deliver at the bank a general warranty deed to the party or parties named in the instructions of the bank, vesting in them good title, free from all incumbrance to said lands, and to deliver at said bank with said deed complete and correct abstracts of the title to the lands, which abstracts were to be examined and passed upon by the attorneys for plaintiff within thirty days from the date of the receipt thereof by the bank, and if it were determined that the deeds vested good title to the lands, then the plaintiff should pay or caused to be paid $3 per acre in cash for the land within ten days after the title was approved by said attorneys; and if the plaintiff failed or refused to pay the said sum of $3 per acre for the lands, then the $10,000 deposited as part payment of the purchase money should be paid over to the defendants by the said bank as liquidated damages.

It was further provided in the agreement that if the titles to said lands were approved by the plaintiffs' attorneys and the purchase money tendered in accordance with the provisions of the contract, and the defendants failed to perform or cause to be performed the things required of them under the contract for sixty days, then they agreed to pay to the plaintiff the sum of $10,000 as liquidated damages for such failure.

The plaintiff made an agreement with J. S. Hogg by which Hogg and others were to become the purchasers of the land and furnish the money to make payment therefor in accordance with the contract. According to this agreement Dougherty retained an interest of one-twelfth in the contract subject to a lien in favor of Hogg and his associates for the return of the purchase money to be advanced by them. And on April 8, 1901, the day to which the time for the deposit had been extended, Hogg requested T. W. House to put the money to Hogg's credit in his bank subject to the contract. House agreed to do so and notified the parties by telegram, "J. S. Hogg deposited $10,000 in my bank, account of Dougherty contract." No entry was made upon the books of the bank on that date and Hogg paid no money into the bank. Afterwards, on April 23d, the account of J. S. Hogg was credited with $10,000, but no entry was ever made on the books showing that the deposit was for the account of the Hoskins contract. This, however, was understood by House and the cashier of the bank, and the money was considered as held subject to the contract and would not have been paid out on Hogg's personal

check for any other purpose. At the time House agreed to give credit to Hogg for the deposit he had that much money on hand in the bank. The defendants knew nothing of the manner in which the money was deposited in the bank until after all their efforts to close the contract as hereinafter shown had ceased. On May 11, 1901, the plaintiff furnished T. W. House a list of the names of the persons to whom he desired that the land should be conveyed, and on the same day he and his associates, by J. S. Hogg as their attorney, notified the defendants that they had examined the abstracts of title which had been approved by their attorneys and that they accepted the title to all of the land, and tendered the defendants the balance of the purchase money in addition to the deposit in the bank of T. W. House and demanded a deed. The abstracts of title did not disclose an oil lease upon the land which the defendants had given to one Munhall, and on account of this lease they were unable to convey a good title, and in reply to the tender of the plaintiff and his associates so notified them and tendered them the sum of $10,000 liquidated damages as provided in the contract in discharge thereof.

When the defendants refused the tender of the purchase money and failed to make the conveyance on May 11th as above stated, the deposit was withdrawn and no longer maintained in the bank, and this suit was brought in the name of J. S. Dougherty alone for specific performance and the recovery of damages. On May 16, 1901, the defendants filed their original answer. Afterwards the defendants got a discharge of the lease, and on July 24, 1901, tendered the plaintiff and his associates a general warranty deed for the land by executing the same and handing it to T. W. House, subject to examination and inspection by the plaintiff and his associates or their attorneys, to be delivered to them unconditionally upon payment of the balance of the purchase money with 6 per cent interest from May 11, 1901. The defendants also notified the plaintiff and his associates that the deed had been made in accordance with their construction of the contract, but that if the contract had not been complied with in any respect correction would be made upon their attention being called to the fact. The deed tendered by the defendants designated the lands stipulated to be reserved in the contract in two tracts and in a long strip, which divided the land to be conveyed in an inconvenient and unreasonable manner. The defendants also notified the plaintiff and his associates of their "readiness to have a decree entered in accordance with the prayer of plaintiff's petition and the terms of the contract," in the suit then pending for specific performance if they should prefer that course to taking a deed which had been tendered. These offers of the defendants were ignored by the plaintiff and his associates, and afterwards on August 8, 1901, the defendants further notified them that if defendants were not advised by August 12, 1901, that they were prepared to close the sale, defendants would assume that they had abandoned the idea of buying the land and would act accord-

ingly. The plaintiff was insolvent when he entered into the contract with the defendants and was so up to the time of the trial, but he got an agreement from J. S. Hogg and his associates to buy the land and they deposited the full amount of the purchase money in the bank of T. W. House, and tendered it and demanded a deed as above stated. When the suit was brought the defendant immediately entered an appearance to the then pending term of the court and demanded a trial, to which the plaintiff would not agree, and owing to the crowded docket the case went over to the next term of the court. On April 13, 1901, the defendant W. W. Hoskins, for himself and as agent for the other defendants, executed and put upon record in Brazoria County a declaration reciting the contract and the deposit of the $10,000 in House's bank, and gave notice of the existence of such contract.

We do not construe the contract as the plaintiff construes it, but are of the opinion that it was an offer by the defendants to be accepted by the plaintiff by the deposit of the money by the time stipulated, and in case the plaintiff should accept the titles and tender the balance of the purchase money the defendants had sixty days within which to comply on their part by a conveyance of the land, on default of which they became liable to pay the plaintiff $10,000 as stipulated damages, not for a delay of sixty days as contended by the plaintiff, but for a failure to convey within sixty days. We are therefore of the opinion that the plaintiff is not entitled both to recover stipulated damages and have specific performance as claimed.

As shown by the evidence the plaintiff did not assign his entire interest in the contract. His assignees were the owners of partial interests acquired subsequent to its execution, and by the terms of the contract title was to be made to the plaintiff or to such persons as he might designate. It was held in Willard v. Tayloe, 8 Wallace, 571, that the owners of partial interests in contracts for land, acquired subsequent to their execution, are not necessary parties to bills for their enforcement. And in Kelly v. Thuey (Supreme Court Missouri), 15 Southwestern Reporter, 62, it was held that the agent who made an express contract in his own name to purchase land could alone compel specific performance. Since the contract was with Dougherty alone and obligated the defendants to convey the land to such persons as he might designate, he was the proper plaintiff in a suit to enforce its performance. The crucial point in the determination of the right of the plaintiff to any recovery in the case is whether there was a deposit of $10,000 in the bank of T. W. House on April 8, 1901, as required by the contract. The option to buy and a right to compel a conveyance of the land could only be secured by a deposit of the money in accordance with the offer of the defendants. It was necessary for the deposit to be a special deposit which, in case the title was accepted, could be paid over to the defendants as a part of the purchase money or forfeited to the defendants in case the plaintiff should fail to complete the purchase. According to the terms

of the contract the plaintiff was required to deposit or cause to be deposited in the bank of T. W. House the sum of $10,000 and cause said bank to notify the defendants that the money was held on the terms and conditions of the contract. By the terms of the contract, in case the titles were accepted the money was to be paid as a part of the purchase money, or to be forfeited to the defendants in case of default on the part of plaintiff. Such a fund is a special and not a mere general deposit. Kimmel v. Dickson, 25 Law. Rep. Ann., 309. The deposit would have to be of such character that in case of the bank becoming insolvent the money would be held as a trust fund to be paid to the account of the contract in preference to general creditors. J. S. Hogg could borrow of the bank the money necessary to make the deposit, and it was not necessary in doing so to go through the idle formality of handling the money. T. W. House had the money in the bank and understood the terms of the contract, and agreed with J. S. Hogg to hold that much money subject to the contract, and so advised the defendants. The entry of the transaction was not made on the books of the bank on the day the arrangement was made, but this was not required in order to bind the parties. The effect of the transaction was that T. W. House loaned J. S. Hogg the money, but held it subject to the terms of the agreement. House was solvent, had the money in his bank, agreed with Hogg that he would hold the amount for the purpose stated, and so notified the defendants. He became bound to apply the money in accordance with the agreement of the parties, and in case he had become insolvent and the defendants had become entitled to receive the money, we think they would have been entitled to have it paid to them in preference to general creditors.

It is objected that the plaintiff was not entitled to recover the $10,000 as liquidated damages in lieu of specific performance because he sued for the same as for a delay of sixty days only. But the petition sets out the facts fully, and in addition to the prayer for recovery as stated, prayed for general and special relief, and as we think, supports the judgment. The withdrawal from the bank of the deposit after the defendants had breached the contract and notified the plaintiff that they would not convey the land can not defeat the right of the plaintiff to recover the stipulated damages. Nor can the refusal of the plaintiff to receive the money tendered as liquidated damages as a discharge of the contract defeat the right to recover such damages. The contract did not require that the names of the persons to whom the deed should be executed should be furnished to the bank on the day the deposit was required to be made, and the plaintiff was not in default in this respect. The names were furnished within time.

Upon the cross-appeal of the plaintiff from the judgment of the court below in refusing specific performance, we conclude briefly that the plaintiff can not recover the damages stipulated in the contract for its breach and also have specific performance thereof. He acquiesces in the judgment of the court below for the stipulated damages and asks an

affirmance thereof. He can not have both remedies, and having recovered a judgment for damages which he seeks to have affirmed, this alone would be sufficient reason for the affirmance of the judgment refusing specific performance. It is conceded that when an option holder has complied with his option contract he can generally enforce specific performance, but in this case the plaintiff, after a deed had been tendered to him conveying the land to the persons designated by him, refused to carry out the contract by paying the balance of the purchase money and accepting the deed. The defendants were not obliged to hold the matter open indefinitely but could rescind the contract, which they did by notice to the plaintiff. It is not an answer to say that the defendants made an unfair designation in the deed of the land to be reserved, because they offered to correct it in any respect in which it did not comply with the contract. But the plaintiff made no objection to the sufficiency of the deed and ignored the tender of it altogether. He should at least have stated his objections and given the defendants an opportunity to meet them. Not having done so he can not complain that a sufficient deed was not tendered. Hackett v. Huson, 3 Wend., 249; Gilbert v. Mosier, 11 Iowa, 498; Mook v. Bryant, 51 Miss., 560; Kenniston v. Blakie, 121 Mass., 552; Biglow v. Morgan, 77 N. Y., 312; Carmen v. Pulz, 21 N. Y., 551;

The record of the declaration of the existence of the contract was not an election which would defeat the right of rescission. There are other equitable reasons for refusing specific performance which need not be entered upon at length. Pomeroy says when the parties have added a provision to an agreement for the payment in case of breach of a certain sum which is truly liquidated damages and not a penalty stipulating for one of two things in the alternative, equity will not interfere to decree specific performance of the first alternative. 1 Pom. Eq. Jur., sec. 447.

We think what has been said disposes of the assignments of error made by both appeals, and finding no error in the judgment, it is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

In response to the request of Hoskins for additional conclusions of fact upon the question of the deposit by J. S. Hogg of the $10,000 forfeit money in the bank of T. W. House and the tender of the deed to the plaintiff we find:

1. That when House agreed to give credit to J. S. Hogg for the deposit of $10,000 House had that much money on hand in his bank.

2. At the time House extended the credit to Hogg for the $10,000, Hogg's account with the bank showed that he had less than $100 on deposit in the bank. The deposit of the $10,000 depended upon the agreement of House to give Hogg credit for that amount for the purpose of meeting the contract, to be held by House subject to the contract, and the telegram of House to Hoskins by which House notified

Hoskins that Hogg had deposited the money on account of the Dougherty contract. As before stated no entry was made on the books of the bank until April 23d, and the matter rested April 8th on the oral promise of House made to Hogg and House's telegram to Hoskins. We deem it unnecessary to set out at length the testimony of Dunn, the cashier of the bank, or that of J. S. Hogg. It is uncontradicted, however, and the Supreme Court may examine it at length. Our conclusion that there was a sufficient deposit is the legal effect given to undisputed facts.

3. The money according to the agreement with House was to remain in the bank subject to the contract, and Dunn's statement that it was to remain there forty days was not correct otherwise than as his understanding from the contract how long the deposit was required to be maintained.

4. The conclusions heretofore filed set out the facts fully with respect to the tender of title by defendants from July 24th to August 12, 1901, and that the plaintiff ignored the tender and did not accept and pay for the land.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.