**FIRST NAT. BANK OF RANGER et al. v.
PRICE et al.  (No. 1616.)**

(Court of Civil Appeals of Texas. El Paso.
May 15, 1924.  Rehearing Denied
June 5, 1924.)

**1. Banks and banking ☞153 — Deposit held
special.**

Where a deposit was made in a bank upon
the express understanding that it was to be
a special deposit for the purpose of organizing
a bank and defraying expenses in connection
therewith, it was a special deposit.

**2. Banks and banking ☞153—That trustee au-
thorized to draw check on funds held not to
change character of special deposit.**

Where a special deposit was made for pur-
pose of organizing a proposed bank, that trus-
tee thereof was authorized to draw checks upon
fund for organization expenses did not change
its status, since that was one of the purposes
for which deposit was made.

**3. Banks and banking ☞153 — Drawing of
checks by trustee of proposed bank for pur-
poses other than organization held not to
change character of special deposit.**

Where a special deposit was made for pur-
pose of organizing a bank, that trustee thereof
drew against fund for purposes other than or-
ganization did not change deposit's character as
special, but was simply an unauthorized diver-
sion thereof.

**4. Banks and banking ☞153—Giving of ordi-
nary passbook held not to change character
of special deposit.**

The character of a special deposit was not
altered because ordinary passbook was given
to depositors, since it was simply an evidence
of deposit.

**5. Banks and banking ☞153—Wrongful com-
mingling of special deposit with other funds
held not to change its character.**

The character of a special deposit was not
altered by bank entering deposit upon its books
as a general deposit and commingling it with
other funds, where this was not done with the
knowledge of depositors, and it being bank's
duty not to commingle it with other funds or
to treat it as a general deposit.

**6. Banks and banking ☞80(6) — Wrongful
commingling of special deposit with other
funds held not to affect rights of depositors.**

The wrongful commingling of a special de-
posit with the other funds of a bank did not af-
fect rights of the special depositors against
bank's receiver, where bank and its receiver at
all times thereafter had money on hand in ex-
cess of amount of special deposit.

**7. Banks and banking ☞80(10)—Petition held
to state a cause of action.**

Petition alleging that plaintiffs made a spe-
cial deposit in defendant bank for the purpose
of organizing a proposed bank, and that bank
violated its instructions and commingled deposit
with other funds, and that it became insolvent
and that by such commingling its assets had

been increased to the amount of the special de-
posit, and that it had, at all times since deposit
was made, more than amount of deposit on
hand, *held* to state a cause of action.

**8. Banks and banking ☞80(6)—Proof of claim
as unsecured held not to estop depositors
from claiming preference.**

Special depositors' proof of claim as unse-
cured claim did not estop depositors from seek-
ing to establish it as a preferred claim, where
no dividend had ever been paid depositors and
the bank and its receiver were not prejudiced
by the making thereof.

**9. Banks and banking ☞80(10)—Finding that
fund was deposited under agreement as spe-
cial deposit for a specific purpose held in ir-
reconcilable conflict with other finding.**

Jury's finding that a deposit was made un-
der an agreement that it was a special deposit
for a special purpose was in irreconcilable con-
flict with finding that depository bank did not
agree to hold it as a special deposit separate
and distinct from its other assets, since an
agreement that money deposited shall not be
commingled with other funds of bank is essen-
tial.

**10. Trial ☞360 — Answer to submitted issue
cannot be disregarded.**

An answer to a submitted issue cannot be
disregarded, though it should not have been sub-
mitted.

**11. Appeal and error ☞999(1) — Appellate
court cannot speculate on true meaning of
finding, but must accept it as it stands.**

Appellate court cannot speculate upon the
true meaning of a special finding by the jury,
but must accept it as it stands.

**12. Trial ☞350(3)—Refusal of evidentiary is-
sue whether deposit was general or special
held not reversible error.**

In an action to establish a special deposit
as a preferential claim against an insolvent
bank, court did not err in refusing a special is-
sue which was merely evidentiary upon ultimate
issue of whether deposit was general or special.

**13. Banks and banking ☞262—Active execu-
tive of bank held to have implied authority to
accept special deposit.**

Vice president of national bank, who was
active executive and managing officer, *held* to
have implied authority to accept a special de-
posit without express authority from directors.

**14. Banks and banking ☞80(10) — Bank's
books held admissible to show that alleged
special deposit was ordinary checking ac-
count.**

Bank's books showing deposits and with-
drawals from a fund alleged to be a special de-
posit were admissible as tending to show that
fund was treated as an ordinary checking ac-
count.

**15. Appeal and error ☞1048(6)—Witnesses
☞266—Refusal to permit cross-examination
of plaintiffs' trustee on issue of fraud held
error, but harmless.**

In an action to establish a special deposit
as a preferential claim against an insolvent

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

bank, refusal to permit defendant to cross-examine plaintiffs' trustee with respect to circumstances under which he made proof of unsecured claim was error, where fraud inducing making of such claim was alleged by plaintiffs, but was harmless, where such issue was found in defendant's favor.

**16. Banks and banking ☞80(10)—List of other banks doing business with defendant bank held properly excluded.**

In an action to establish a special deposit as a preferential claim against an insolvent bank, list of other banks doing business with defendant bank was properly excluded, being wholly irrelevant.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Action by W. W. Price, trustee, and others against the First National Bank of Ranger and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Turner & Seaberry, of Eastland, for appellants.

L. R. Pearson, of Ranger, for appellees.

HIGGINS, J. W. W. Price, trustee, E. L. Baldwin, and others brought this suit against the First National Bank of Ranger, Tex., an insolvent national bank in process of liquidation, and its receiver, E. B. Cushing, to recover certain moneys and to establish the same as a preferred claim upon the theory that such money had been deposited in the bank as a special deposit in trust. The plaintiffs recovered judgment in the sum of $10,077.33, which was established as a preferred claim. The bank and its receiver appeal.

Briefly stated, the material allegations of the petition are as follows: On December 1, 1920, plaintiffs were preparing to organize a state bank at Eliasville, Tex., to be known as the Guaranty State Bank & Trust Company of Eliasville, and the plaintiffs had subscribed to the capital stock of the proposed bank the sum of $10,077.33 in money and approximately $20,000 in negotiable notes, which they desired to deposit in trust as a special deposit with the Ranger bank, of which they advised the Ranger bank, through its active vice president, C. B. Hedrick, and the Ranger bank, acting through its said vice president, stated to plaintiffs it would accept such money and notes to be held in trust in the form of a special deposit for the purpose of organizing the proposed bank and paying necessary organization expenses, and plaintiffs did deposit such money and notes in trust with the Ranger bank as a special deposit in the name of W. W. Price, trustee of the Guaranty State Bank & Trust Company of Eliasville, for the purpose of getting the officers of the Ranger bank to issue a certificate to the commissioner of insurance and banking of the state of Texas, certifying that said money had been deposited with the Ran-

ger bank for the purpose of securing a charter of the proposed bank and paying the necessary organization expenses in connection therewith, and the Ranger bank received said money and notes in trust as a special deposit for such purpose, whereby a trust relation was created between the plaintiffs and the Ranger bank, with respect to such deposit and the deposit became a trust fund to be held by the Ranger bank as a special deposit, separate and distinct from its general deposits and other assets, and that the Ranger bank violated its instructions, obligation, and agreement and mingled the money with its other deposits and assets; that on February 17, 1921, the Ranger bank became insolvent and Cushing was the appointed and qualified receiver and was administering its estate; that by the wrongful commingling of the special fund with the other assets and deposits of the bank its assets had been increased in the sum of $10,077.33; and that at all times since the deposit was made the Ranger bank and its receiver has had, and now has, in their possession more than said sum of money.

The defendants answered by general demurrer, general and special denials, and specially answered, in substance, that on December 18, 1920, there was deposited to the credit of the Guaranty State Bank & Trust Company of Eliasville $36,560 in notes and checks delivered by the plaintiffs with the agreement that the notes could be returned at any time to plaintiffs and the account charged accordingly; that the plaintiff Price was expressly authorized by the plaintiffs to draw checks against the account, signing same "Guaranty State Bank & Trust Company of Eliasville, Tex., by W. W. Price, Trustee," and defendant bank was authorized to charge the account accordingly; that the account was carried on the books of defendant bank in the general ledger as in all other cases of bank accounts; monthly statements were furnished Price, who was given a regular passbook showing deposits and withdrawals, and Price drew checks against the account and made deposits as in similar cases by general depositors; that the plaintiffs knew, or by the use of reasonable diligence could have known, that the funds were mingled with the general assets of defendant bank and that Price had drawn checks and made deposits as aforesaid; wherefore, the plaintiffs have ratified the acts of Price and are estopped from asserting that the deposit was special or in trust and that the deposit was a general one; that on May 2, 1921, Price, trustee, had proven the claim as a balance due on open account subject to check and presented same to the receiver, which was accepted by him and reported to the comptroller; that a 10 per cent. dividend had been declared by the receiver and paid to the general depositors and paid prior to the assertion of the preference claim herein, and that the plain-

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tiffs were estopped by reason of the previous execution and filing with the receiver of their claim as a common unsecured claim.

By supplemental petition the plaintiffs denied the allegations of the answer and set up that the proof of claim by Price was made at the instance of the defendants on a form furnished by them, upon the representation made that if it was not so made the account would become barred, which representations were false and made for the purpose of deceiving plaintiffs and to prejudice their rights to establish the deposit as a preference claim, which representations were relied upon, and that the defendants refused to permit the plaintiffs to use any other form or accept a preferred claim, although the plaintiffs insisted that they be permitted to file a preferred claim, which the receiver refused to accept; further, that defendants had not been prejudiced in any way by the claim filed, and they had never been paid any dividend nor tendered any.

A condensed statement of the findings of the jury upon special issues is as follows: (1) That the notes and money were deposited under an agreement that the deposit was a special deposit made for the purpose of procuring a charter for the Eliasville bank and defraying the expenses in connection therewith, and for that purpose only. (2) The defendant bank did not agree with plaintiffs when the deposit was made to hold the notes and money as a special deposit separate and distinct from its other assets. (3) The defendant bank, through its vice president, Hedrick, agreed that the plaintiff W. W. Price, trustee, might draw checks against said account without changing the status of the account. (4) The assets of the defendant bank were augmented or increased by said deposit. (5) The assets of the defendant bank going into the hands of the receiver were augmented or increased by said deposit. (6) That such assets of the defendant bank passing into the hands of the receiver were so augmented or increased $10,077.33. (7) When the defendant bank closed on February 17, 1921, $10,077.33 was on deposit in the defendant bank in the account of the Guaranty State Bank & Trust Company of Eliasville, W. W. Price, trustee. (8) The defendants had not suffered any loss by the filing of the proof of claim by the plaintiffs or by any other act of plaintiffs with reference to the deposit since the closing of the Ranger bank. (9) The Ranger bank, nor its receiver, had not changed or altered their position by reason of the filing of the proof of claim by plaintiffs.

Upon special issues requested by the defendants these additional findings were made: (1) On December 18, 1920, when the deposit was made, Hedrick did not agree with C. W. Wick and B. A. Noble that all checks drawn against the account signed "W. W. Price, Trustee," should be paid by the defendant bank upon presentation. (2) When the deposit was made on December 18, 1920, Wick and Noble did not agree with Hedrick that the deposit should be held on open account subject to check by W. W. Price, trustee. (3) When said deposit was made there was prepared and delivered to Noble and Wick, agents for plaintiffs, a regular passbook ordinarily furnished to depositors. (4) Price was not induced to execute the proof of claim by a misrepresentation by the receiver as to when the claim would become barred by limitation.

Explanatory of the reference to Noble and Wick in the findings, it should be said that they were members of the organization committee of the Eliasville bank and were the parties who made the deposit in the name of Price, trustee, and who made the agreement with Hedrick with reference to the same.

The notes referred to in the pleadings and findings were executed by parties who expected to become stockholders in the Eliasville bank. They were payable to the order of the several makers and by them indorsed in blank. They were accepted by the Ranger bank as cash and became its property, but it was the understanding that upon the organization of the Eliasville bank it was to take over such of the notes as were then unpaid from the Ranger bank. Upon the failure of the latter bank the notes were returned to the makers. The fund in controversy is the proceeds of checks deposited on December 18, 1920.

Error is assigned to the action of the court in refusing a peremptory instruction in defendants' favor. It is asserted that under the evidence it appears that the deposit was general and not special.

[1] McBride v. American Ry. & Lighting Co., 60 Tex. Civ. App. 226, 127 S. W. 229, is very much in point upon the question presented by this assignment. The facts in that case are complicated, but upon the question presented it is sufficient to say that the fund in controversy had been deposited for the specific purpose of paying a contractor for construction work. It was held that the deposit was special and a preferred claim. The court says:

"When money or its equivalent is deposited in a bank without any special agreement, the law implies that it is to be mingled with the other funds of the bank, the relation of debtor and creditor is created between the bank and the depositor, and the deposit is general.

"In such a transaction the bank becomes the owner of the fund. When, on the other hand, money or its equivalent is so deposited with an accompanying agreement that the identical thing deposited shall be returned, or that the same shall be paid out for a specific purpose, the relation thus created is not that of debtor and creditor. Such a transaction is a special deposit, and the bank is liable only as bailee. In such a case the fund is a trust fund, the bank acquires no title thereto, and is a mere trustee for the safe-keeping, return, or disbursement of the fund, according to the special contract by

which the deposit is made. 1 Morse on Banks and Banking, §§ 183–188; 5 Cyc. 513–515; Anderson v. Bank, 112 Cal. 598, 44 Pac. 1063, 32 L. R. A. 479, 53 Am. St. Rep. 228; Peak v. Ellicott, 30 Kan. 156, 1 Pac. 499, 46 Am. Rep. 90; Association v. Jacobs, 141 Ill. 261, 31 N. E. 414, 16 L. R. A. 516, 33 Am. St. Rep. 302; Bank v. Weiss, 67 Tex. 331, 3 S. W. 299; Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85. In our opinion the deposit in question was not a general, but a special, deposit."

See, also, Hoskins v. Dougherty, 29 Tex. Civ. App. 318, 69 S. W. 103; City of Miami v. Shutts, 59 Fla. 462, 51 South. 929.

The evidence of Wick and Noble is to the effect that they discussed the matter fully with the Ranger bank's active vice president, Hedrick, and the deposit was made upon the express understanding that it was to be a special deposit for the purpose of organizing the Eliasville bank and defraying the expenses in connection therewith, and that he, as vice president, would make the proper certificate to the commissioner of insurance and banking. Wick testified:

"There was no different arrangement made with reference to the money deposited in the First National Bank of Ranger, Tex., and the notes deposited with said bank on said occasion. We told Mr. Hedrick that both the money and the notes were to be held in trust by the First National Bank of Ranger, Tex., as a special deposit for the purpose of organizing a state bank and trust company at Eliasville, Tex., and defraying all expenses in connection therewith, and Mr. Hedrick stated that the First National Bank would accept said money and notes for this purpose, and this purpose only.

"There was no different arrangement made with reference to said notes and money. We stated to Mr. Hedrick that the entire deposit was being made for the purpose of organizing a state bank and trust company of Eliasville, Tex., and defraying the expenses in connection therewith, and we asked him if the First National Bank of Ranger, Tex., would accept said deposit and hold the deposit in trust in a form of a special deposit for this purpose, and he stated that the bank would do so, and we left both the money and the notes with him for this purpose and on the conditions stated.

"We discussed the matter in detail as stated in my previous answers, and at the time we made the deposit of the notes and money Mr. Hedrick told us that the First National Bank of Ranger, Tex., would hold the money and notes as a special deposit for the purpose above stated, that is, for the purpose of organizing a state bank and trust company at Eliasville, Tex., and paying all expenses in connection therewith, and that the deposit would be used for no other purpose, and that he would make the necessary certificate to the commissioner of insurance and banking of the state of Texas when our plans for organization of the proposed bank fully materialized."

Under the authorities cited above, this testimony shows a special deposit.

[2-6] The fact that Price was authorized to draw checks upon the fund for organization expenses did not change the status of the deposit from special to general, because that was one of the purposes for which the deposit was made. In this connection the record shows that Price drew one or possibly more checks against the fund, for purposes other than organization expense, which were paid by the Ranger bank, but this would not alter the terms of the agreement upon which the fund was deposited. It was simply an unauthorized diversion of the fund and did not operate to change the character of the balance left. Nor is the fact that an ordinary passbook was given at the time the deposit was made of controlling effect. It was simply an evidence of the deposit—a form of receipt—and did not alter the terms of the contract of deposit. It was merely evidentiary tending perhaps to show a general deposit. The evidence discloses that the Ranger bank entered the deposit upon its books as a general deposit and mingled the fund with its moneys, but there is nothing to show that this was done with the knowledge or consent of the plaintiffs. The bookkeeping methods of the bank could not change the contract its vice president had made, and the commingling of the funds was unauthorized and wrongful; for when the bank accepted the fund as a special deposit it became its duty not to commingle the same, or otherwise treat it as a general deposit, and it impliedly agreed so to do. This wrongful commingling of the funds by the Ranger bank did not affect the rights of the appellees, because the Ranger bank and its receiver, at all times since the deposit was made, have had on hand money in excess of the amount of the special deposit. Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85. For the reasons indicated, the peremptory instruction was properly refused.

[7] Error is also assigned to the action of the court in overruling defendants' general demurrer to the petition. Under the authorities cited the petition states a cause of action.

The third and fourth propositions are closely related and will be considered together. The third is that judgment should have been rendered in favor of the defendants, because upon the second issue the jury found that the Ranger bank did not agree with plaintiffs, when the deposit was made, to hold the notes and money as a special deposit separate and distinct from its other assets, and upon other issues found that when the deposit was made there was prepared and delivered to Noble and Weeks, agents for plaintiffs, a regular passbook ordinarily furnished to depositors, and that Price was not induced to execute the proof of claim by any misrepresentation of the receiver. The fourth proposition is that findings 1 and 2 are conflicting.

[8] The finding that a passbook was pre-

pared and given to the depositors was non-controlling, at most a mere evidentiary fact of but slight probative value upon the issue of whether the deposit was general or special. The fact that Price made proof of the claim as an unsecured claim did not estop the owners of the fund from thereafter seeking to establish it as a preferred claim, for no dividend has ever been paid appellees and the appellants have been in no wise prejudiced by the making of the claim.

[9] The real difficulty arises upon findings 1 and 2 The first finding is that the fund was deposited under an agreement that it was a special deposit for a specific purpose. Under this finding appellees were entitled to judgment establishing their claim as preferred.

But the second finding is that the Ranger bank did not agree to hold the fund as a special deposit separate and distinct from its other assets. This is contradictory of the first finding and, standing alone, would entitle defendants to judgment. It embraces two findings· First, that it was not a special deposit; second, that there was no agreement to keep the deposit separate and distinct from its other assets. It is an absolute essential of a special deposit that there be an agreement, express or implied, that the money deposited shall not be commingled with the other moneys and assets of the bank. It is not necessary that there be an express agreement to that effect, because a special deposit implies an agreement upon the part of the depository not to commingle the fund with his own moneys. It is manifest that, in the absence of an agreement, express or implied, not to commingle the funds, the depository is authorized to do so, and the relation of debtor and creditor arises, rather than bailor and bailee, and the deposit is general. A special deposit does not necessarily lose its preference by an unauthorized commingling by the depository, as was held in Bank v. Weems, supra, but necessarily it does when the commingling is authorized or assented to by the depositor.

[10, 11] The second issue should not have been submitted, but, having been submitted, the answer thereto cannot be disregarded. The jury, no doubt, believed that, in the absence of any evidence of an express agreement to keep the funds separate, there was no agreement so to do and found accordingly; whereas, there is an implied agreement so to do in the case of a deposit containing the other essential elements of a special deposit. Doubtless the jury was misled by the second issue. Probably it intended to find that there was no express agreement to

keep the funds separate, but we cannot speculate upon the true meaning of the finding and must accept it as it stands. In our opinion the findings upon the first two issues are of such conflicting character that the judgment herein cannot stand. Upon retrial, if submitted upon special issues, the question should be submitted of whether the deposit , was general or special, with appropriate definitions of the two kinds of deposits. That is the primary ultimate fact at issue.

[12] The court did not err in refusing the special issue complained of in the fourteenth assignment and fifth proposition. It was evidentiary merely upon the ultimate issue of whether the deposit was general or special.

There was no error in the submission of issues 5 and 8. Nor was there any error in the submission of the first issue, though we do not approve of its form. The proper method of submission, if upon retrial the case be submitted upon special issues, is indicated above.

The ninth proposition is:

"In the absence of a custom acquiesced in by the directors, a vice president of a national bank has no authority to accept a 'special' deposit without express authority from said directors."

[13] The evidence discloses that Hedrick was the active executive and managing officer of the bank. This being the case, he had implied authority to accept a special deposit, and this was sufficient.

[14] The tenth proposition complains of the exclusion of the books of the defendant bank showing deposits and withdrawals of the fund in controversy. It is asserted by the appellee that the exclusion of this evidence was harmless, because it was simply a duplication of other evidence already admitted. We cannot tell whether this is true or not. In any event, upon retrial it should be admitted as evidence tending to show that the account was treated by the parties as an ordinary checking account.

[15] The court also erred in refusing to permit defendants to cross-examine Price with respect to the circumstances under which he made the proof of claim, as it was material upon the issue of fraud alleged by the plaintiffs. The error, however, is harmless, and would not operate to reverse, in view of the finding in appellants' favor upon the issue of fraud.

[16] The list of other banks doing business with the defendant bank was properly excluded. It was wholly irrelevant.

Reversed and remanded.