RICHMOND PAPER CO. *v.* BRADLEY.

[75 South. 381, Division B.]

GUARANTY. *Offer and acceptance.*

> Where a traveling salesman who received a commission on sales and was therefore pecuniarily interested in the acceptance of orders taken by him, not only recommended, to his house the acceptance of an order, but stated that as to all orders sent in, "I know they are all O. K. and any I sell I am willing to guarantee payments of their bill," and his employers extended the credit; in such case there was an acceptance of the offer to guarantee and the letter and the acceptance created the relationship of guarantor and guarantee.

APPEAL from the chancery court of Harrison county. HON. W. M. DENNY, JR., Chancellor.

Suit by Thomas L. Bradley against the Richmond Paper Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Russhing & Guice,* for appellant.

*White & Ford,* for appellee.

COOK, P. J., delivered the opinion of the court.

The appellee is a traveling salesman and a resident of Biloxi, Miss. The appellant is a corporation domiciled

at Richmond, Va., and is engaged in the business of selling paper, stationery, etc. Mr. Bradley filed a bill in the chancery court of Harrison county seeking to recover of and from the Richmond Paper Company the sum of two hundred and fifty dollars, claimed to be due him under his contract with said company as its traveling salesman. Without going into the details of the pleadings and the amended pleadings, suffice it to say that the paper company denied that it owed Mr. Bradley anything; that they had advanced him under the contract the sum of three hundred dollars and forty-four cents and Bradley had guaranteed that a bill sold by him to one Barker amounted to five hundred and fifty dollars and sixty-two cents; that this bill Barker had never paid; that Barker had been declared a bankrupt and no dividends had been paid.

The complainant, Mr. Bradley, demurred to the answer and cross-bill, upon the following grounds, viz.:

"(1) There is no equity in said amended cross-bill.

"(2) Because the alleged written guaranty referred to therein is not made a part of said amended cross-bill or referred to, and said allegation that complainant guaranteed the payment of the account is a mere conclusion.

"(3) Said amended cross-bill attempts to introduce a new cause of action different from that stated in the original bill and original cross-bill and seeks relief based on a transaction occurring and maturing after the filing of the original bill.

"(4) Said amended cross-bill shows on its face that alleged guaranty was made on June 24, 1914, that the Pensacolian Publishing Company was adjudicated a bankrupt on April 19, 1915, and the papers in the cause show the original bill was filed October 19, 1914, and the cause of action, if any, accrued to defendant only upon the bankruptcy of said Pensacolian Publishing Company.

"(5) For other causes to be shown on the hearing."

The demurrer was sustained, and the cause was then tried upon the bill and the answer thereto, which was, in effect, the general issue.

So, the cause was tried upon the original bill and the evidence taken in support of same, and the affirmative relief sought by the answer and cross-bill was cut off. The evidence taken at the trial discloses that the defendant contended that their contract with Mr. Bradley was reduced to writing, in the form of a letter, and accepted by him. Mr. Bradley denied this, and the court evidently adopted Mr. Bradley's version of the contract, and entered a decree in his favor, from which this appeal is prosecuted.

We will not attempt to follow the meanderings of the trial, but will come directly to what we deem the crucial points involved in this appeal. The learned trial judge, in sustaining the demurrer to the affirmative defense, made in the answer and cross-bill, evidently thought that the plea of set-off involving the alleged guaranty of the bill sold to Barker was not in fact a guaranty, else he would have overruled the demurrer.

The alleged guaranty is reduced to writing and must be measured by its terms, not by the construction of the appellee. The letter written by Mr. Bradley is in these words:

"I am sending you orders for J. U. H. Barker, proprietor of the Pensacolian Pub. Co., whom I have been selling ever since he has been in business—seven-eighths of his goods and also gave him regular terms and he is good pay, meeting his obligations promptly, has owed both Whitaker and Hagan as high as eight hundred to one thousand dollars at one time and they will ship anything he wants. You need not hesitate to extend credit and all the orders I have so far sent in are old customers of mine, and I know they are all O. K., and any I sell I am willing to guarantee payments of their bill."

The appellee insists that the letter only expressed a willingness to guarantee the payment of the bills sold, and that it was not therefore a guaranty; it lacks finality. It will be noted that the writer not only recommended and

advised the shipment, but went further and told about, their reputation and habit of paying, but said, in effect,. "I am so sure that the bill will be paid I am willing to guarantee its payment." Now, it seems to us the only thing left to be done to constitute a guaranty was for the paper company to accept the offer to guarantee, and that we think was done when the credit was extended.

It has been said:

"A mere request to extend credit to a third person does not create any liability in the nature of a guaranty on the part of the requesting party."

But to this statement is added:

"Little more, however, is required to evidence an intention so to be bound." 12 R. C. L. p. 1055, and cases there cited.

The facts are that the paper company, after the receipt of the letter, shipped the goods and extended the credit.

If there is any lack of definiteness about the intention of Mr. Bradley to bind himself to pay the bill in case the customer should fail to do so, the facts, we think, supply the deficiency. Mr. Bradley had an interest—a pecuniary interest—in the acceptance of the order. He would receive a commission on the sale. So, he was not merely recommending a customer of previous reputation for meeting his financial obligations, but offered to guarantee the payment of the bill, and his offer was accepted by the shipment of the goods.

The "little more" than a mere request to ship the goods and extend the credit was added, and, in our opinion, the letter and the acceptance of the order created the relationship of guarantor and guarantee.

*Reversed and remanded.*