**TYLER COUNTY STATE BANK et al. v. SHIVERS. (No. 1314.)\***

(Court of Civil Appeals of Texas. Beaumont. Feb. 6, 1926. Rehearing Denied Feb. 24, 1926.)

**1. Appeal and error ☞719(8).**

Trial court's findings of fact stand as fully ascertained facts without question, where they are not challenged.

**2. Banks and banking ☞80(10).**

In action against insolvent bank and the commissioner of banking, to establish a claim for conversion of Liberty bonds, deposited in bank for safe-keeping, petition *held* to state cause of action.

**3. Appeal and error ☞742(1).**

Assignments of error, not followed by propositions, cannot be considered on appeal.

**4. Appeal and error ☞733.**

Assignment that court erred in rendering judgment for plaintiff for certain sum *held* too general to be considered on appeal.

**5. Appeal and error ☞742(1).**

Assignments of error, when too general, cannot be aided by propositions asserted thereunder.

**6. Appeal and error ☞742(6).**

Propositions asserted under assignment that court erred in rendering judgment in favor of plaintiff for certain sum *held* insufficient to aid assignment.

**7. Appeal and error ☞742(1).**

Propositions in briefs cannot take place of valid assignments.

**8. Banks and banking ☞80(6) — Deposit of Liberty bonds in bank for safe-keeping constituted a special deposit as respects right to preference.**

Deposit of Liberty bonds in bank for safe-keeping, to be returned on surrender of deposit certificates, constituted bonds a special deposit, and created status of bailor and bailee between depositors and bank, as respects right of preference on insolvency.

**9. Banks and banking ☞15—Plaintiffs depositing Liberty bonds for safe-keeping in bank becoming insolvent held not entitled to protection under guaranty fund for conversion of bonds.**

Plaintiffs, depositing for safe-keeping in bank operating under guaranty fund plan, Liberty bonds which were converted by bank prior to insolvency, *held* not entitled to protection under guaranty fund.

**10. Election of remedies ☞7(1).**

Party, to make an "election," must have had choice between two or more valid, available, and inconsistent remedies, and have undertaken to enforce one of them.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Election.]

**11. Election of remedies ☞11.**

An effort to enforce a supposed but nonexisting remedy does not constitute an election.

**12. Election of remedies ☞11—Party, misconceiving right, or through mistake attempting to exercise right to which he is not entitled, or prosecuting an action based on remedial right which he erroneously supposes he has, does not make conclusive election.**

Since an election can exist only where there is a choice between two or more available inconsistent remedies, that party misconceives his right, or through mistake attempts to exercise a right to which he is not entitled, or prosecutes an action based on a remedial right which he erroneously supposes he has, does not constitute a conclusive election.

**13. Banks and banking ☞80(1)—Election of remedies ☞7(3)—Plaintiffs depositing Liberty bonds for safe-keeping in bank did not discharge their claims on bank's insolvency by proving claims before commissioner of banking, nor make an election estopping them from subjecting bank's assets to prior payment of their claims.**

Plaintiffs, depositing for safe-keeping in bank operating under guaranty fund plan Liberty bonds which were converted by bank prior to its insolvency, did not, by proving their claims before commissioner of banking, create relation of debtor and creditor so as to discharge their claims, nor make an election estopping them from subjecting assets of bank to prior payment of their claims.

**14. Banks and banking ☞15—Plaintiffs, filing suit to subject assets of insolvent bank to prior payment of their claims, elected to abandon their claims before banking commissioner.**

Plaintiffs, depositing for safe-keeping in bank operating under guaranty fund plan Liberty bonds which were converted by bank prior to its insolvency, by filing suit to subject assets of bank to prior payment of their claims, elected to abandon their claims before banking commissioner.

**15. Appeal and error ☞731(5).**

Assignment of error that finding is not supported by evidence, but failing to state wherein insufficiency lies, is insufficient.

**16. Appeal and error ☞742(6) — Proposition held insufficient, where only stating that court's finding of fact was not supported by evidence.**

Proposition under assignment of error was insufficient, where, when considered with assignment, it only stated that court's finding of fact was not supported by evidence.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted May 5, 1926.

**17. Appeal and error ☞989.**

Reviewing tribunal is not required to examine all the evidence to determine whether a particular finding of fact is supported by evidence.

**18. Appeal and error ☞733—Assignment, not stating why court erred in rendering judgment, held too general to be considered on appeal.**

Assignment, not stating why court erred in rendering judgment, impressing on assets of insolvent bank a trust for payment of judgment in preference to all other claims *held* too general to be considered on appeal.

**19. Appeal and error ☞742(1) — Proposition should not be considered, where there was nothing in assignment to suggest question presented.**

Proposition that plaintiffs, to recover, must have traced proceeds of converted property into some specific property belonging to assets of insolvent bank, should not be considered, where there was nothing in assignment of error to suggest any such question.

**20. Banks and banking ☞80(6) — Plaintiffs held entitled to preferred claim for conversion of bonds by insolvent bank, on proof that proceeds of bonds went into general assets of bank.**

Plaintiffs, depositing for safe-keeping in bank Liberty bonds, which were converted by bank prior to its insolvency, *held* entitled to preference as for special deposit, on proof that proceeds of bonds went into general assets of bank, unless trustee, bank, could identify its own funds from proceeds of converted property.

**21. Banks and banking ☞80(10) — Evidence held to show that cash received from converted Liberty bonds entered into and was not distinguishable from other assets of bank when it was closed.**

Evidence *held* to show that cash received for Liberty bonds, converted by bank, entered into assets of bank, and was so used in its regular course of dealing that when bank was closed it was impossible to distinguish proceeds of bonds from other assets of bank.

Appeal from District Court, Tyler County; J. M. Combs, Judge.

Action by Robert A. Shivers, trustee, against the Tyler County State Bank and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Dan Moody, Geo. E. Christian, and Jno. W. Goodwin, all of Austin, for appellants.

J. A. Mooney, J. E. Wheat, and Coleman & Lowe, all of Woodville, and Robert A. Shivers, of Port Arthur, for appellee.

O'QUINN, J. The following statement of the nature and result of the suit is taken from appellants' brief:

"Plaintiff, Robert A. Shivers, trustee, instituted this suit as trustee, in the district court of Tyler county, Tex., against Tyler County State Bank and J. L. Chapman, commissioner of banking of the state of Texas, to recover the sum of $20,000, and to establish said sum as a trust and preferred claim against all of the assets of the Tyler County State Bank in the hands of the banking commissioner of Texas.

"The Tyler County State Bank is a banking corporation, incorporated under the laws of the state of Texas, and operating under the depositors' guaranty fund plan. On the 28th day of March, 1921, said bank closed its doors and placed itself in the hands of the banking commissioner for liquidation.

"Plaintiff alleges in his petition that he sues as trustee for the parties listed in his petition. For cause of action he states that the parties for whom he sues were on the 28th day of March, 1921, the owners of certain United States Liberty Loan bonds and war savings stamps issued by the United States government, aggregating $19,219.75; that said parties did on and before the 28th day of March, 1921, deposit said property in Tyler County State Bank, as special deposits to be redelivered to said parties upon demand, and that said bank promised to redeliver said property to said parties. Plaintiff further alleges that prior to its failure said Tyler County State Bank hypothecated and sold all of said property deposited with it for the sum of $20,000, and received the proceeds therefrom, and mixed and mingled said proceeds with its assets, and converted said proceeds into other assets, the nature of which plaintiff was not acquainted with. Plaintiff states that said funds were trust funds, and were mixed and mingled with the assets of said bank at the time it was closed and taken in charge by the commissioner of banking, and that said property and proceeds are now in the hands of said commissioner. It is asserted by plaintiff that the aforesaid proceeds increased the assets of said bank by the amount thereof as taken over by the banking commissioner, and that, by virtue of the mixing and mingling of said proceeds with the assets of said bank, plaintiff is entitled to a preference lien on all of the money and property of said bank in the hands of the commissioner of banking. Judgment is prayed for the amount of money and property now in the hands of said commissioner, equivalent to the amount received by Tyler County State Bank for the property deposited with it as aforesaid, and it is further prayed that said amount be established as a trust fund and preferred claim against all of the assets of said bank.

"Defendants filed answer in which they pleaded, in addition to a general demurrer, two special exceptions and a general denial, 'that each of the parties whose claim or demand is sued upon herein by plaintiff as trustee, except Henry Tucker, presented his claim to the commissioner of insurance and banking as common creditor's claim, thus electing the character of a common creditor, and, having so elected, plaintiff cannot now recover if at all on the theory that the funds described in his petition are trust funds.'

"The case was tried by the court without the intervention of a jury, and resulted in a judgment in favor of plaintiff against defendants in the sum of $17,295, in which said judgment said sum was established as a trust fund in the hands of the commissioner of banking, classified and established as a preferred claim against the assets of said bank in the commissioner's hands

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and said commissioner ordered to pay said claim in preference to all other claims against said bank."

From this judgment defendants bring this appeal.

[1] The facts are without dispute. Appellant Tyler County State Bank was a banking corporation, doing a banking business under and by virtue of the laws of the state of Texas, at Woodville, in Tyler county, Tex., and was operating under the guaranty fund plan. The judgment recites the names of the individuals and the amount of each that the court found had deposited Liberty bonds with appellant bank. There is in the record an agreed statement of certain named persons who had bonds deposited for safe-keeping giving the amounts of each, but it does not cover all of the persons named in the findings of the court in his judgment. However, appellants have not challenged the correctness of any of the findings of fact made by the court in his judgment, so they stand as fully ascertained facts, without question. The said agreement, above referred to, further admits that, prior to the closing of said Tyler County State Bank, said bank converted and sold each and all of the bonds in question, and made the basis of plaintiffs' suit, and that said bonds were sold and converted by said Tyler County State Bank prior to the 28th day of March, 1921, the date said bank ceased to do business and was closed by the banking commissioner, and prior to the time that any of the property in said bank was taken in charge and was placed in the custody and control of the commissioner of insurance and banking of the state of Texas. The record also contains an agreement that appellee, Robert A. Shivers, prior to the institution of this suit, was authorized, by all the parties named in plaintiffs' petition as holders of claims against the Tyler County State Bank for the value of the Liberty bonds and United States certificates converted, to institute this suit in his name as trustee for them and in their behalf.

In addition to the agreement in the record, that the parties named in plaintiffs' second amended original petition were the owners and holders of Liberty bonds deposited in the Tyler County State Bank, and which were sold and the proceeds thereof converted by the bank, it was further agreed that certain of them, being the ones named on pages 45, 46, and 47 of the statement of facts, each presented his claim to the commissioner of insurance and banking before the suit was filed, and based their said claims on said Liberty bonds for their face value as common creditors of said Tyler County State Bank, and that said claims were accepted by the banking commissioner as common creditor claims, and the presentation and proof of said claims were made prior to the time when said claims were assigned or trans-

ferred to appellee, Shivers, as trustee, for the purpose of this suit. No dividends or payments were made to, or received by, any of the owners of the bonds. We also gather from the record that, at the date of the closing of the bank, there were assets on hand other than notes, $10,502.61; that in addition to this the bank held notes in the sum of $86,-155; that, after the bank passed into the hands of the banking commissioner for liquidation to the date of the trial, approximately the sum of $29,825 had been collected on the notes.

[2] Appellants' first and second assignments of error are:

"(1) The court erred in overruling the general demurrer of defendant, the Tyler County State bank, to plaintiff's second amended original petition.

"(2) The court erred in overruling the general demurrer of defendant J. L. Chapman, banking commissioner of Texas, to plaintiff's second amended original petition."

The assignments are overruled. The petition states a cause of action. Cochran v. Sonnen (Tex. Civ. App.) 26 S. W. 521; Bank v. Weems, 6 S. W. 802, 69 Tex. 489, 5 Am. St. Rep. 85.

[3] Appellants' third and fourth assignments are not followed by any propositions, and hence cannot be considered.

[4] The fifth assignment of error is:

"The court erred in rendering judgment in favor of plaintiff for the sum of $17,295."

The assignment is too general. It points out no error, does not state wherein the court erred. City of Galveston v. Devlin, 19 S. W. 395, 84 Tex. 319, 326. Appellants submit the following propositions, based upon the above assignment:

"(1) Where, in an action against an insolvent bank in the hands of the commissioner of banking and the commissioner of banking to recover the proceeds of trust property alleged to have gone into the assets of said bank, defendants allege and the undisputed evidence shows that the parties for whom plaintiff sues had, prior to assigning said claims and prior to filing suit, filed their claims with the commissioner of banking as common creditors, and that said claims had been approved by said commissioner as common creditor claims, and adjudication is shown, and plaintiff is not entitled to recover judgment as a preferred creditor.

"(2) Where, in an action against an insolvent bank in the hands of the commissioner of banking and the commissioner of banking to recover the proceeds of trust property alleged to have gone into the assets of said bank, defendants allege and the undisputed evidence shows, that the parties for whom plaintiff sues had prior to assigning said claims and prior to filing suit filed their claims with the commissioner of banking as common creditors and that said claims had been approved by said commissioner as common creditor claims, an election is shown, and plaintiff is not entitled thereafter to recover judgment as a preferred creditor."

[5-7] It is not believed that these propositions can be looked to in aid of the assignment of error. The assignment itself is unquestionably too general. Under all the rules and decisions it cannot be considered, unless the propositions thereunder give it vitality. The rule seems to be well established that assignments of error, when too general, cannot be aided by propositions asserted thereunder. Cannon v. Cannon, 3 S. W. 36, 66 Tex. 682; Railway Co. v. Hinzie, 18 S. W. 681, 82 Tex. 628; Chapman v. Reese (Tex. Civ. App.) 268 S. W. 970 (writ refused). Propositions in briefs cannot supply or take the place of valid assignments. Cammack v. Rogers, 73 S. W. 795, 96 Tex. 461.

[8-12] However, if the assignments, as enlarged by the propositions, should be considered, we do not think they should be sustained. The parties who deposited the bonds in the bank did so for safe-keeping, not as a deposit to be drawn against at the will of the depositor. The bonds were to be safely kept and returned to the parties upon the surrender of their deposit certificates. This constituted the bonds a special deposit. The relation of debtor and creditor did not arise between the bank and the depositors, but the true status was that of bailor and bailee. Tyler County State Bank v. Rhodes (Tex. Civ. App.) 256 S. W. 947; Tyler County State Bank v. Johnson (Tex. Civ. App.) 257 S. W. 932. The bank was operating under the guaranty fund plan, and evidently the owners of the bonds, when they presented their claims for the value of the bonds which had been converted by the bank, did so under the impression that they were entitled to protection under the guaranty fund. They had no such remedy. Bank v. Rhodes, supra. If they were mistaken in this, then they could not be held to have made an election, for, in order to make an election, the party must have had a choice between two or more valid, available, and inconsistent remedies, and that he undertook to enforce one of them. An effort to enforce a supposed but nonexisting remedy does not constitute an election. Bandy v. Cates, 97 S. W. 710, 44 Tex. Civ. App. 38; Asher v. Pegg, 123 N. W. 739, 146 Iowa, 541, 30 L. R. A. (N. S.) 890. As the relation of debtor and creditor did not exist between the bond owners and the bank, the filing of their claims was immaterial. Furthermore, the rule is well settled that an election can exist only where there is a choice between two or more inconsistent remedies actually existing at the time the election is made. Hence the fact that a party misconceives his right, or through mistake attempts to exercise a right to which he is not entitled, or prosecutes an action based upon a remedial right which he erroneously supposes he has, does not constitute a conclusive election. Brodkey v. Lesser (Tex. Civ. App.) 157 S. W. 457; Bandy v. Cates,

97 S. W. 710, 44 Tex. Civ. App. 38; 20 C. J. 21.

[13, 14] Moreover, the bond owners' claim arose out of the misappropriation of the bonds by the bank while it was acting in a fiduciary capacity, and the proof of their claims before the commissioner of banking did not change the relations of the parties into the ordinary relation of debtor and creditor, so as to discharge the claims, nor to operate as an election so as to estop them from pursuing their remedy to subject the assets of the bankrupt's estate to prior payment as of a trust fund. Both acts were founded upon the same state of facts, viz.: The deposit of the bonds in trust, their conversion by the bank, and the claims of the owners from their value. Bank v. Price (Tex. Civ. App.) 262 S. W. 797, 801; Brown v. Hannagan, 96 N. E. 714, 210 Mass. 246; Bank v. Wood, 118 N. W. 282, 286, 120 N. W. 625, 143 Iowa, 635; McMahan v. McMahon, 115 S. E. 293, 122 S. C. 336, 26 A. L. R. 1295. Besides, the appellants have suffered no injury by reason of some of the bond owners, plaintiffs herein, filing with the banking commissioner their claims for the value of their bonds. No dividends were paid to them, and therefore no advantage has been gained by them because of the filing of their claims, and no detriment has been suffered by appellants. Stowell v. Texas Employers' Insurance Association (Tex. Civ. App.) 259 S. W. 311. We think, too, that it should be held that the filing of this suit was, in effect, an abandonment of their claims before the banking commissioner, as it sufficiently appears that same has not been further urged or insisted upon by them.

Again the bank commissioner, in taking charge of an insolvent bank and liquidating same, is much the same as the receiver of an insolvent corporation or a trustee in bankruptcy, who has charge of and winds up the affairs of an insolvent concern, and it has been held that, where property has been wrongfully converted by a corporation to its use and benefit, and the assets of the corporation, by its insolvency, have come into the hands of a receiver, filing a claim with the receiver of the corporation for the value of the wrongfully converted property does not preclude the maintenance of an action seeking to follow the funds arising from the wrongful conversion of the property into the hands of the receiver as a trust fund; the two acts not being inconsistent. Sweet v. Bank & Trust Co., 77 P. 538, 69 Kan. 641; Heidelbach v. Bank, 33 N. Y. S. 794, 87 Hun, 117; Stringer v. Gamble, 118 N. W. 979, 155 Mich. 295, 30 L. R. A. (N. S.) 815; Richmond Paper Co. v. Bradley, 75 So. 381, 115 Miss. 307, L. R. A. 1918E, 123; Talcott v. Friend, 179 F. 676, 103 C. C. A. 80, 43 L. R. A. (N. S.) 649; Katzenstein v. Reid, Murdock & Co., 91 S. W. 360, 41 Tex. Civ. App. 106 (writ denied).

Appellants' sixth assignment is:

"The court erred in finding that the proceeds of the bonds alleged to have been converted by the Tyler County State Bank were mixed and mingled with the funds and assets of said bank as the same existed at the time it was closed and taken over by the banking commissioner, in the form of notes, case on hand, and deposits in other banks; there being no evidence which justified such finding."

[15] This assignment is too general. It merely asserts that the finding is not supported by the evidence. It fails to state wherein the evidence was insufficient. To test the sufficiency of the evidence to support the finding of the court, the whole of a lengthy statement of facts would have to be inspected. The assignment should point out in what particular the evidence fails to support the finding. Yoe v. Montgomery, 4 S. W. 622, 68 Tex. 338, 342; Chapman v. Reese (Tex. Civ. App.) 268 S. W. 967 (writ refused). Appellants' proposition under this assignment is:

"In an action to recover the proceeds of trust property alleged to have gone into the assets of an insolvent bank, in order to justify a finding by the court that said proceeds were mixed and mingled with the assets of said bank in the form of notes, cash on hand and deposits in other banks, it must appear from the evidence that such proceeds went into such notes, cash on hand, and deposits in other banks."

[16, 17] We do not believe that the proposition is any more specific than the assignment. And the assignment and the proposition, considered together, only amount to saying that the finding of fact made by the court is not supported by the evidence, and, too, if we are correct in saying the assignment is too general, then it cannot be aided by reference to the proposition under it, for propositions cannot supply the place of valid assignments. Cannon v. Cannon, 3 S. W. 36, 66 Tex. 682; Cammack v. Rogers, 73 S. W. 795, 96 Tex. 461. Furthermore, in order to determine whether the proceeds of the converted property went into and were mixed and mingled with the assets of the insolvent bank, the entire evidence would have to be examined, which we are not required to do. Nothing is pointed out by either the assignment or its proposition to indicate to the contrary of the finding, but in any event we think the finding is amply supported by the evidence, and we so find. It would serve no useful purpose to set out the evidence at length which we think supports the court's finding, or to discuss same, and we simply state that the finding is amply supported by the record.

Appellants' seventh assignment is:

"The court, having rendered judgment in favor of plaintiff and against defendants for the sum of $17,295, erred in further rendering judgment in favor of plaintiff, impressing upon the assets of the Tyler County State Bank, as the same existed when closed by the banking commissioner, a trust for the payment of said judgment and in establishing said judgment a preferred·claim against the assets of said bank, and in ordering the commissioner of banking to pay said judgment in preference to all other claims against said bank."

[18] We do not believe that this assignment complies with the rules. If read standing alone, it brings to mind no reason why the court erred in rendering judgment impressing upon the assets of the insolvent bank a trust for the payment of the judgment in preference to all other claims. We think it should be held too general.

The proposition under the assignment is:

"In an action to recover the proceeds of trust property alleged to have gone into the assets of an insolvent bank, taken over by the banking commissioner and to impress a trust upon all said assets, the burden rests on plaintiff to identify the trust proceeds by tracing same into a specific piece of property or special fund; and, plaintiff having failed to meet the burden of proof, the court can impress no trust upon the assets or any part thereof."

[19, 20] It is seen that by the proposition it is sought to be urged that, in order to recover, plaintiff must have traced the proceeds of the converted property into, not the general assets of the insolvent bank, but into some specific piece of property or some special fund belonging to the assets of the bank. This proposition can find lodgment in the assignment only by indulgence, for there is nothing in the assignment to suggest any such question. That being true, they should not be considered. However, in the event consideration should be given to the assignment, we think it should be overruled. We think that, if the proceeds of the converted property are traced into the general assets of the bank, and we have held that they were, that is sufficient, and that when so done the cestui que trust may enforce his right against the whole of the mixed fund, unless the trustee (the bank) can and does identify its own funds from the proceeds of the converted property. 39 Cyc. pp. 536–538, and note 25, p. 538; Bank v. Weems, 6 S. W. 802, 69 Tex. 489, 5 Am. St. Rep. 85; Cochran v. Sonnen (Tex. Civ. App.) 26 S. W. 521; Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Orr v. Trust Co., 236 S. W. 642, 649, 291 Mo. 383, 404; Schulz v. Bank (Mo. App.) 246 S. W. 614. As was said in Orr v. Trust Company, supra:

"It would indeed be strange doctrine that a trustee can accept money or other property in trust, and, by commingling such property with his own in hopeless confusion, defeat the very object and purpose of the trust. Such a rule would violate one of the cardinal principles of the law, that no man may take advantage of his own wrong."

[21] Furthermore, it is admitted that appellant Tyler County State Bank held the bonds of the claimants for safe-keeping, and

that it sold each and all of the bonds and converted the proceeds to its use and benefit prior to March 28, 1921, the date on which the bank was closed and taken in charge by the banking commissioner. We think the evidence amply shows that the cash received for said bonds entered into the assets of the bank, and was used by said bank in its regular course of dealing, and was by it mixed and mingled with its other money and funds, so that, at the date of the closing of the bank, it was impossible to distinguish the proceeds of the bonds from the other assets of the bank. The bonds were sold in the latter part of 1920 or early part of 1921. E. A. Dismuke, cashier of the bank testified that the proceeds of all the bonds went into the assets of the bank. He said, "Everything went into the assets of the Tyler County State Bank." At the time the bank closed, March 28, 1921, it had available assets in the sum of $10,502.61, consisting of cash in vault, $1,543.85, and the remainder in other banks. It also had notes approximating the sum of $86,155. At the time the case was tried there had been collected on these notes the sum of $29,825. The judgment was for $17,295. It does not appear that at any time from tho sale of the bonds and the conversion of the proceeds to the closing of the bank that the assets of the bank, considering the notes, were ever below the amount of the claim or judgment. The sum of the notes represented that amount of money the bank had loaned to different parties, and the money loaned was but the representative of other money had and used in the regular course of the bank's business, so that it appears that the funds, including the notes, on hand at the time the bank closed, must have and did include the proceeds of the bonds converted by the bank. Bank v. Weems, 6 S. W. 802, 69 Tex. 489, 5 Am. St. Rep. 85.

Appellants contend that Bank v. Weems, supra, supports their contention that the proceeds of the converted bonds must have been traced into some specific piece of the bank's assets, or some specific fund of the bank at the time the bank was closed. We do not think that case sustains their contention, but, to the contrary, it supports the contention of appellee. Judge Gaines says:

"Where the trustee kept the fund separate, and the original money was capable of being identified, there never was any question. The dictum above quoted is not understood as having been applied to such a case. It is where the trustee has mingled the trust money with the mass of his other funds that the difficulty arises. It may be that, when the entire mass is once paid away, the right to claim a trust in any money or property is forever lost. But if, as in the present case, throughout all the trustee's dealings with the funds so mingled together, he keeps on hand a sufficient sum to cover the amount of the trust money, we think it capable of demonstration that the trust should attach to the balance that is found to remain in his hands. Let us take the case before us for an illustration. It is shown by the evidence that, after the bank received the money, amounting to about $5,000, its cash assets were never reduced below the sum of $6,000 until they went into the receiver's hands. Even admitting that, in the course of its transactions, this identical money was paid out by the bank to its uttermost farthing, yet we know that every dollar so expended left its representative and exact equivalent in the vault from which it was taken; and that, when again the money so left was expended, it left in turn its equivalent behind it. We see, therefore, that whatever changes may have taken place in the funds from the receipts and expenditures of the bank, the balance left at the date of its failure was the result of the proceeds of the notes to the extent to which such balance was thereby increased; and that the cash which went into the hands of the receiver should be deemed the representative of those proceeds and impressed with the trust character which pertained to them. The equity would have been no stronger if the City Bank had used appellant's money in the purchase of bonds or other securities, which were found in its vaults and identified, and if appellant were now seeking to recover the securities so bought."

The portion of the decision quoted by appellants does not relate to that phase of the case being discussed supra, or to the facts of this case, but to an entirely different state of facts. Judge Gaines was then discussing the law as to funds that *had not entered into and been mixed and mingled with the bank's general assets.* Judge Gaines clearly held that the bank was entitled to priority of payment for the amount of the funds which were collected by the other bank and had been mixed and mingled with its general assets. The facts in the instant case show, without dispute, we think, that the Tyler County State Bank sold the bonds belonging to its customers, and that the proceeds of the bonds thus sold went into and were indiscriminately mixed and mingled by the bank with its general assets, and were used by it in its usual course of business. Dismuke, the cashier of the bank, testified pointedly that "everything [speaking of the proceeds or money received from the sale of the bonds] went into the assets of the Tyler County State Bank." The record otherwise amply supports this too, and there was no evidence, as we view it, disputing it. We fail to find any support in the Weems Case of appellants' contention that the proceeds of the converted bonds must be traced directly into some specific piece or assets or special fund of the bank. Judge Gaines' expression:

"Even admitting that, in the course of its transactions, this identical money was paid out by the bank to its uttermost farthing, yet we know that every dollar so expended left its representative and exact equivalent in the vault from which it was taken; and that, when again the money so left was expended, it left in turn its equivalent behind it. We see, therefore, that whatever changes may have taken place in the

funds from the receipts and expenditures of the bank, the balance left at the date of its failure was the result of the proceeds of the notes to the extent to which such balance was thereby increased; and that the cash which went into the hands of the receiver should be deemed the representative of those proceeds and impressed with the trust character which pertained to them,"

—holds just to the contrary, and that, when it was shown that the proceeds of the converted property entered into the assets and were mixed and mingled with the funds of the wrongdoer, it was sufficiently traced and pointed out. When the money representing the value of the bonds went into the assets of the Tyler County State Bank, and was mixed and mingled with its other moneys and assets and was used in the course of its regular business, making loans and taking notes, the notes that were on hand at the date of the failure of the bank were as much the "representative and equivalent" of the bond money thus appropriated as was the actual cash that might be found in its vaults, and, as it does not appear that at any time after the conversion of the bonds and use of their proceeds by the Tyler County State Bank, its assets were below the sum of $17,295, the amount of the judgment; therefore the judgment giving appellee priority of payment out of the assets in the hands of the banking commissioner was correct, and should be affirmed. See authorities, supra. What we have said disposes of appellants' other assignments, and they are all overruled.

The judgment is affirmed.