BANK OF McLAIN *v.* PASCAGOULA NAT. BANK.*

(Division A. April 23, 1928.)

[117 So. 124. No. 27141.]

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 943, n. 81; Banks and Banking, 7CJ, p. 712, n. 15; p. 718, n. 77; Guaranty, 28CJ, p. 930, n. 2; p. 933, n. 16; Pleading, 31Cyc, p. 465, n. 29; On the general rule as to construction of guaranty, see 12 R. C. L. 1074; 2 R. C. L. Supp. 1543; 5 R. C. L. Supp. 674; 6 R. C. L. Supp. 737; 7 R. C. L. Supp. 403.

*Paul B. Johnson* and *Mayson & Kelly,* for appellant.

*Ford, White, Graham & Gautier,* for appellee.

742

Argued orally by *Paul B. Johnson,* for appellant, and *E. J. Ford,* for appellee.

McGowen, J. The plaintiff in the court below, Bank of McLain, appellant here, filed its declaration, consisting of three counts, against the Pascagoula National Bank, appellee here, based upon a certain letter and note executed by S. A. Gano.

The appellee interposed a demurrer to the first and second counts of the declaration, and, to the third count, filed a plea of the general issue with notice of special matter. The demurrer to the first and second counts of the declaration was sustained, and the plaintiff requested, and obtained, leave to file an amended declaration, which was done.

The amended declaration charged, in effect, that on August 3, 1925, S. A. Gano executed and delivered to the Pascagoula National Bank his promissory note for three thousand and twenty-seven dollars and forty-one cents, due September 15th, payable to the Pascagoula National Bank, or bearer, with interest at the rate of six per cent. per annum; that thereafter, on the 18th day of August, 1925, the Pascagoula National Bank sent Gano's note through the mail to the Bank of McLain, which note was accompanied by a letter, both of which are set out here, as follows:

"$3027.41.

Pascagoula, Miss., Aug. 3, 1925.

"September 15th, 1925, after date I, we, or either of us, promise to pay to Pascagoula National Bank or bearer, three thousand twenty-seven and 41/100 dollars for value received, with interest at the rate of six per cent. per annum after maturity until paid. And in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, an additional amount of ten per cent. shall be added to the same as attorneys fees. The drawers and indorsers severally waive presentation for payment, protest, and notice of protest for nonpayment of this note payable at Pascagoula National Bank, Pascagoula, Miss.

"No. ———. Due September 15/25.

"S. A. GANO.

" ———.

"Address: ———."

"8593.

"Pascagoula National Bank.

"Pascagoula, Miss., Aug. 18, 1925.

"H. C. Herring, President.

"O. B. Read, Esq., Cashier, Bank of McLain, Mississippi—Dear Mr. Read: We inclose herewith note of S. A. Gano for three thousand twenty-seven dollars and forty-one cents, dated August 3d, maturing September 15th, and would appreciate your handling for the time it has yet to run on an eight discount basis, remitting proceeds to Marine Bank & Trust Co., New Orleans, for our credit and advice, or to the First National Bank of Mobile, for credit and advice of the Pascagoula National Bank, Moss Point, Miss.

"We are carrying the line up to our limits under the National Bank Act, and this will give us an excess is the reason for requesting an outside handling.

"We are secured by a deed of trust over road equipment valued in excess of one hundred thousand dollars,

and an assignment of all moneys that become due by the highway department, as Mr. Gano is now engaged in road work under federal aid.

"Send the note to us against maturity; collection will be made and remittance at par.

"Thanking you in anticipation, beg to remain,

"Yours very sincerely,

"Enc.                    H. C. HERRING, President."

"HCH.

The first count, in brief, alleged that this note and letter constituted a warranty from the Pascagoula National Bank to the Bank of McLain, upon which warranty the Bank of McLain remitted, in accordance with the instructions contained in the letter, to a bank at Mobile, the proceeds of the note, after deducting discount at eight per cent.; that the note was forwarded, in accordance with instructions in the letter, against its due date, to the Pascagoula National Bank; that no payment had been made thereon; and that judgment was demanded for the amount thereof.

The second count, in effect, alleged that the transaction between the two banks as to the note, with the accompanying letter, constituted the relation of debtor and creditor between the Pascagoula National Bank and the Bank of McLain, and that the Pascagoula National Bank pledged the Gano note as collateral security for its debt to the Bank of McLain, for the money loaned, as above described, by remittance to its correspondent; that same had not been paid; and that judgment was demanded against appellee for the payment thereof.

The appellee filed its demurrer to the first and second counts of the declaration, saying that the exhibits attached to the declaration showed that there was no warranty or loan of money, but a simple sale by the appellee to the appellant of a negotiable instrument, payable to bearer; that the allegation as to the warranty and as to the relation created by the exhibits were mere conclu-

sions of the pleader, and that neither counts showed other than a mere sale, and that the letter did not amount to a warranty, or to a pledge; nor did it create the relation of debtor and creditor, but that it was a sale by the appellee to the appellant of a note for its discount value.

There was also a demurrer to the third count, unnecessary to detail, and upon the day of hearing the court permitted the demurrer to the third count to be amended so as to charge that there was a misjoinder of the cause of action, in that the first and second counts were based upon contract—that is, a loan of money by the plaintiff to the defendant. The third count of the amended declaration is based on a tort, charging fraud and deceit, and demanding a recovery of damages therefor.

The appellant objected to the amendment of the demurrer. The court allowed the amendment, but offered plaintiff time to prepare upon the new question presented. Thereupon the court entered the order permitting the amendment, and appellant voluntarily dismissed its cause of action as based upon the third count of the amended declaration. And the demurrer to the first and second counts was sustained. Plaintiff declining to amend, the cause was finally dismissed, and appeal is prosecuted here.

1. Counsel adverts to the allegations of the original declaration to which we shall advert simply to say that when he availed himself of the opportunity afforded him by the court to file his amended declaration, he thereby abandoned his original declaration. It might have stood upon same, and appealed here to settle the principles of the case, or might have let judgment be entered against him and then have prosecuted an appeal. The declaration having been entirely rewritten, we shall not advert to the original, but only to the amended declaration.

2. We shall not advert to the action of the court in permitting the amendment to the demurrer. No error

could be predicated upon it for the simple reason that no injustice was done appellant by allowing the amendment, and, if there had been, no error could be assigned here, for the reason that it dismissed its cause of action based on the third count.

3. The only question presented to which we shall refer is whether or not the note and letter, exhibits to the declaration, constituted a sale of the note by the appellee to the appellant, or whether there was either a warranty of same by the appellee or a pledge of same for a debt.

The court below held that the transaction constituted a sale by the appellee to the bank absolute, without warranty or pledge.

The declaration does not allege any preexisting relations between the two banks prior to the date of the latter, August 18, 1925, but plants its appeal here upon a construction of the language of the letter, and bases its contention that the letter constituted a warranty or a pledge upon the statements therein that the Bank of McLain was asked to handle the note "for the time it has yet to run on an eight per cent. discount basis;" and on the further statement that the appellee was "carrying the line up to our limits under the National Bank Act," and that the note would constitute an excess as the reason for an outside handling; that appellee was secured by a deed of trust on road equipment valued in excess of one hundred thousand dollars, and an assignment of all moneys that become due under a road contract between Gano and the highway department, and mainly upon the last clause of the letter, "Send the note to us against maturity; collection will be made and remittance at par."

The same rules of construction are applied to a warranty or guaranty as to any other contract, and the letter must constitute a good, valid, and binding contract. There were no surrounding circumstances indicative of

a desire on the part of the appellee, the bank, to borrow money from the appellant bank, and we must apply the same rules of construction to this as to any other written contract. See 12 R. C. L. 1074; 28 C. J., p. 930.

It would be difficult indeed to find authority in point, as usually each letter or each statement and the circumstances surrounding same, in cases of alleged warranty or guaranty, are different, and all the words and clauses of the whole statement are to be construed together and that sense is to be given to each which best comports with the general scope and interest of the whole. *Douglass* v. *Reynolds, Byrne & Co.,* 7 Pet. (U. S.) 123, 124, 8 L. Ed. 630.

Most of the cases cited by counsel for appellant are so clear it would seem that it would hardly be necessary for a court to analyze or construe them. They are cases where there could be little doubt that warranties were intended deducible from the language used. The main case that counsel seem to rely on is the case of *Page Trust Co.* v. *Wachovia Bank & Trust Co.,* 188 N. C. 766, 125 S. E. 536, 37 A. L. R. 1368, which he says is in point. The letter, written by one bank to the other, in that case, is as follows:

"We inclose two short-time renewal notes in the sum of four thousand five hundred dollars, which we will thank you to place to our credit, less the discount and stamps and advise us. We consider these notes perfectly good, and *will see that they are promptly taken care of at maturity.*" (Italics ours.)

The underscored language was held to be a guaranty, and we assume that the court had little difficulty in reaching that conclusion. In fact, the opinion is devoted, for the most part, to other questions. Likewise the case of *Richmond Paper Co.* v. *Bradley,* 115 Miss. 307, 75 So. 381, L. R. A. 1918E, 123, has no application. The court held, in that case, that the relation of guarantor and

guarantee was created by the use of the following words by the traveling salesman in a letter to his employers:

"I know they are all O. K., and any I sell I am willing to guarantee payments of their bill."

His employers extended credit.

The strongest case presented is the case of *Sturges* v. *Bank of Circleville*, 11 Ohio St. 153, reported in 78 Am. Dec. at page 296, wherein upon an agreement by correspondence between two banks to purchase and sell certain notes, a different note from the one about which the banks had exchanged correspondence, signed by a stranger, was forwarded by the defendant to the plaintiff with the statement that the bill or note inclosed "is perfectly safe." To which there was this reply: "Your favor with stated inclosure is received, and is very satisfactory." The court, by a division of three to two, held this statement to be a warranty or a guaranty.

We think the language used in this case clearly indicates the intention on the part of the parties that the appellant was to purchase from the appellee the note, and that its profit in the transaction was the interest plus the discount for the time which the note had to run, and that the language emphasized and quoted in this opinion simply meant that, at the maturity of the note, the appellee would collect at par without imposing the usual charges for handling and collecting as an inducement it could offer the appellant to purchase the note. The words, "at eight per cent.," in banking circles usually means a sale of a note at a discount. " 'Discount,' in finance, is 'to purchase or pay the amount of in cash, less a certain per cent., as a promissory note, bill of exchange, etc., to be collected by the discounter or purchaser at maturity.' Under a bank charter providing that certain classes of promissory notes and bills of exchange shall, 'when discounted' by the bank, be upon the footing of foreign bills of exchange, a note is 'discounted' by the bank when it deducts from the face of the note in advance the interest

until maturity, and places the balance to the credit of the makers. *Eastin* v. *Third Nat. Bank,* 102 Ky. 64, 42 S. W. 1115, 1116 (quoting and adopting the definition in Cent. Dict.)." 2 Words & Phrases, Second Series, p. 61.

We are not to impute dishonest and criminal motives to parties to a transaction unless it is clear that such was the intention. It is reasonably clear in this case that the National Bank of Pascagoula wanted to sell this note because it did not want to violate the National Banking Act. If it had desired to evade the National Banking Act we take it that reference would not have been made to such in the letter, because that would have been notice to the purchasing bank that it was assisting the Pascagoula National Bank in deceiving the government authorities and imposing a fraud upon the government and violating the federal law in that behalf. The argument is ingenious, but not availing, as we think.

We do not think it was intended by the letter to create the *status* of debtor and creditor. That being true, we cannot construe this letter to mean that a pledge of the Gano note was offered by the Pascagoula National Bank, and accepted by the Bank of McLain, as collateral security for a debt then and there created. The demurrer to the first and second counts was properly sustained, and we think there is no error in the record.

*Affirmed.*