# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60683
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 29, 2016

Lyle W. Cayce
Clerk

EDWARDS FAMILY PARTNERSHIP, L.P.;
BEHER HOLDINGS TRUST, LIMITED,

Plaintiffs–Appellees,

versus

WILLIAM D. DICKSON,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

William Dickson appeals a summary judgment that he is liable for nearly $26 million under certain guaranty contracts. We find no error and affirm.

I.

In 2010, Edwards Family Partnership, L.P. (the "Partnership"), and

No. 15-60683

Beher Holdings Trust, Ltd. ("Beher") (sometimes referred to jointly as the "Lenders"), loaned Community Home Financial Services ("Community") $16 million—the Partnership $4 million and Beher $12 million. Dickson—Community's founder, president, and CEO—signed the identical loan agreements on behalf of Community and as a personal guarantor. Community also executed notes to secure its obligations to the Partnership and Beher, respectively, set to mature on August 1, 2013, and Dickson signed them on behalf of Community and as a personal guarantor.

Dickson executed contemporaneous, independent, respective guaranties in favor of the Lenders; by each guaranty, Dickson "unconditionally and absolutely guarantee[d] [] the due and punctual payment and performance when due of the principal of the Note and the interest thereon . . . ." He accepted liability that would be "primary and direct and not conditional or contingent upon the enforceability of any obligation, the solvency of [Community] . . . , [or] any obligation or circumstance which might otherwise constitute a legal or equitable discharge or defense of a surety or guaranty . . . ." He also assured the Lenders that they would not need to "make any demand" upon or "exhaust [their] remedies against" Community, any collateral, or other guarantor before recovering from him. The guaranty contracts included other language worthy of reproduction here:

> The obligations of [Dickson] hereunder shall not in any way be affected by any action taken or not taken by [the Lenders], which action or inaction is hereby consented and agreed to by [Dickson], *or by the partial or complete unenforceability or invalidity of* . . . the value, genuineness, validity or enforceability of the Collateral or any of the Guaranteed Obligations.[1]

---

[1] The term "Guaranteed Obligations" referred to the sums advanced under the loan agreements and covered by the notes. Community used the sums to purchase consumer-loan portfolios, which served as "Collateral" for the loan and notes. "Lender" referred to the Partnership and Beher.

2

. . .

[Dickson] hereby waives . . . *all defenses* with respect to . . . any other action taken by Lender in reliance hereon . . . it being the intention hereof that [Dickson] shall remain liable as a principal until the full amount of all Guaranteed Obligations shall have been indefeasibly paid in full in cash and performed and satisfied . . . in full . . . and the Loan Agreement terminated, notwithstanding any act, omission or anything else which might otherwise operate as a legal or equitable discharge of [Dickson].

[Dickson] acknowledges and agrees that his obligations as Guarantor shall not be impaired, modified, changed, *released or limited in any manner whatsoever* by any impairment, modification, change, release or limitation of the liability of [Community] or any other guarantor of the Guaranteed Obligations or any other Person or his or their respective estates in bankruptcy resulting from the operation of any present or future provision of the bankruptcy laws or other similar statute, *or from the decision of any court.*

. . .

[Dickson] hereby *waives and agrees not to assert against* [the Lenders] any rights which a guarantor or surety could exercise.

. . .

[Dickson] agrees that his obligations hereunder are irrevocable, joint and several, and *independent of the obligation of* [Community] or any other guarantor of the Guaranteed Obligations . . . .

(Emphasis added.)

Dickson testified that Community had made payments until October 2011 but defaulted by failing to pay thereafter. The Lenders demanded that Community cure the defaults; neither Community nor Dickson cured but instead sued the Lenders under theories ranging from breach of contract to conversion; the Lenders counterclaimed against Community for judgment on the loan transactions and notes and against Dickson personally for judgment on the guaranty contracts. Shortly after the Lenders counterclaimed, Community filed for bankruptcy, which automatically stayed all other proceedings against it.

No. 15-60683

The Lenders moved to sever their claims against Dickson under the guaranties. Shortly thereafter, Community and Dickson filed an adversary complaint in the bankruptcy proceeding, contesting the "extent and validity" of Community's obligations to the Lenders. The court granted the Lenders' motion to sever, allowing their claims against Dickson to proceed because Dickson personally was not in bankruptcy and thus was not protected by the stay.

The notes matured and remained unpaid, so on October 11, 2013, the Lenders moved for partial summary judgment as to Dickson's liability as guarantor. The court granted summary judgment and ordered the parties to file affidavits establishing the extent of Dickson's liability, after which the court concluded that Dickson owed $25,777,169 ($6,427,978 to the Partnership and $19,349,191 to Beher), with interest continuing to accrue.

## II.

Dickson avers primarily that summary judgment on his guarantor liability was premature because, in the bankruptcy proceedings, he and Community were challenging the extent and validity of the underlying obligations. Under Mississippi law,[2] guaranty contracts are subject to the same rules of construction that apply to other contracts. *Bank of McLain v. Pascagoula Nat'l Bank*, 117 So. 124, 126 (Miss. 1928). Dickson's theory carries some intuitive force because Mississippi defines a "guaranty" as "a *collateral* undertaking by one person to answer for the payment of a debt or the performance of some contract or duty in case of the default of another person who is liable for such payment or performance in the first instance." *Powell v. Sowell*, 145 So. 2d 168, 171 (Miss. 1962). Also, "[i]f the principal underlying obligation is

---

[2] The relevant documents expressly adopt Mississippi law, and, in any event, Mississippi law would apply to this diversity action based on a contract. *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429 (5th Cir. 2007).

extinguished, generally the guarantor's obligation is also extinguished." *Woods-Tucker Leasing Corp. of Ga. v. Kellum*, 641 F.2d 210, 213 (5th Cir. Unit A Mar. 1981). From this, Dickson reasons persuasively that his guarantor liability is entirely derivative of Community's obligation, which could be discharged in the bankruptcy proceeding. Dickson posits that if Community's obligation falls away, so must his.

Though colorable, Dickson's argument ignores the unambiguous language of the guaranty contracts,[3] under which Dickson's liability is "independent of the obligations of [Community]" and "primary and direct and not conditional or contingent upon the enforceability of any obligation." Dickson agreed that the Lenders need not exhaust their remedies against Community or any other entity. He expressly waived any and all defenses to enforcement. Finally, his personal guarantees are not affected by the "unenforceability or invalidity" of the notes or loans, any bankruptcy proceedings, any limitation on Community's obligations, or "the decision of any court."

In sum, Dickson personally guaranteed the Lenders that he would satisfy the obligations represented by the promissory notes no matter what.[4] He does not allege that the guaranty contracts are ambiguous, unenforceable, or

---

[3] *Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc.*, 753 So. 2d 1077, 1087 (Miss. 2000) ("When a contract is unambiguous, determining its meaning is a question of law for the court to decide, and the contract must be enforced as written.").

[4] *See, e.g.*, *United States v. Little Joe Trawlers, Inc.*, 776 F.2d 1249, 1253–54 (5th Cir. 1985) (applying Texas law) ("Even if Texas law required a guarantor to receive notice of intent to accelerate, the guaranty contract in this case was so broad that Guarantors should be required to make good on their guarantee even in the absence of such notice . . . . We emphasize first that the rights of guarantors must be determined from the language of the contract . . . . In other words, Guarantors, in effect, agreed to be bound by the guaranty instrument even if they were presented with a legal out . . . . Guarantors, in effect, said in the guaranty instrument, 'No problem. We'll pay anyway.' This type of guaranty contract provision has been given effect in other jurisdictions, *Black v. O'Haver*, 567 F.2d 361 (10th Cir. 1977) . . ., and we see no reason to refuse to give it effect here." (some citations omitted)).

No. 15-60683

invalid but only that he cannot be liable as a guarantor until the Lenders show that Community is liable.[5]  That might be a sensible provision to include in a guaranty, but it was not included here, and under Mississippi law, "[t]he most basic principle of contract law is that contracts must be interpreted by objective, not subjective standards.  A court must effect a determination of the language used, not the ascertainment of some possible but unexpressed intent of the parties."[6]  We enforce the unambiguous language of the guaranty contracts, *Ronald Adams Contractor*, 753 So. 2d at 1087, which requires that Dickson fulfill the obligations under the notes regardless of any outcome of the bankruptcy proceedings or challenges to the underlying obligation.

That conclusion does not end the matter, because the Lenders have the burden to show Dickson is liable under the guaranty contracts.  *See EAC Credit Corp. v. King*, 507 F.2d 1232, 1236 (5th Cir. 1975).  They must show that (1) Dickson signed the guaranty contracts; (2) those contracts encompass Community's obligations under the promissory notes and loan agreements; (3) they are the current holders and owners of the notes; (4) the notes are in default; and (5) the conditions (if any) of Dickson's liability—as laid out in the guaranty contracts—have been met.  *See id.*; *NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1264 (5th Cir. 1994).

The Lenders presented evidence sufficient to establish Dickson's liability as guarantor.  They attached copies of the loan agreements, the notes, and the

---

[5] In his reply brief, Dickson claims that some defenses cannot be waived.  Whatever the merits of that contention, it is waived because he raised it for the first time in his reply brief.  *See Hardman v. Colvin*, No. 15-30449, 2016 U.S. App. LEXIS 6576, at *23 (5th Cir. Apr. 11, 2016) (noting that "we ordinarily do not consider claims raised for the first time in a reply brief" (citation and internal quotation marks omitted)).  Moreover, Dickson proffers no such defenses.

[6] *Lehman-Roberts Co. v. State Highway Comm'n*, 673 So. 2d 742, 743 (Miss. 1996) (quoting *Simmons v. Bank of Miss.*, 593 So. 2d 40, 42–43 (Miss. 1992)).

No. 15-60683

guaranty contracts, each of which Dickson signed on behalf of Community and as guarantor. The guaranties specifically make reference to the notes and loan agreements. The record revealed that the Lenders are the current holders and owners of the notes. Dickson testified that Community defaulted on the notes by failing to pay after October 2011, and the evidence showed that the notes remained unpaid when they matured on August 1, 2013. Finally, the guaranty contracts reveal no conditions on Dickson's liability save Community's default on the notes, which the Lenders proved. Dickson offers no evidence whatsoever in response, claiming only that the bankruptcy proceeding may result in the invalidity of the underlying obligation. Thus, the Lenders met their burden to recover on the guaranties.

### III.

Dickson challenges the summary judgment on the extent of his guarantor liability. After finding Dickson liable under the guaranties, the court ordered the parties to file competing affidavits on the extent of his liability. The court concluded that the Lenders' affidavit fairly and accurately reflected Dickson's liability.

The Lenders presented an affidavit from Martha Borg, the companies' bookkeeper. Borg averred that she was responsible for reviewing all of Community's financial reports and for calculating the principal-and-interest balances on its respective promissory notes, so she was familiar with Dickson's obligations under the guaranty contracts. She calculated his liability based on a "Borrowing Base Certificate Form" provided by Community and Dickson in October 2011 and on an August 2010 agreement regarding the amount due as of July 31, 2010, and she outlined her calculations and steps in a spreadsheet attached to her affidavit.

Dickson filed a competing affidavit that contended that Borg "vastly

overstates the amounts that could possibly be deemed due." Dickson also claimed he lacked sufficient information to contest Borg's affidavit because, "through no fault of [his] own,"[7] he could not conduct discovery. He posited that Borg misrepresented certain sums borrowed by Community, that she lacked the qualifications and ability to conduct an accurate accounting, and that she failed to account for at least two repayments made by Community.[8] The combined errors, Dickson maintains, led to a $1.2 million overestimation of his liability. He offers no documentary evidence or records to support those assertions.

Dickson did, however, support his affidavit with an equally conclusional affidavit from Robert Cunningham, a certified public accountant hired by Community's bankruptcy estate to render professional accounting services. Cunningham concurred in Dickson's conclusion that Borg's affidavit overstated Dickson's liability by $1.2 million but provided no records or documents in support.

Dickson has failed to present sufficient evidence to survive summary judgment on the amount of his obligation under the guaranty contracts. He admits that he lacked sufficient information to dispute Borg's claims, but he did not move for additional time, under Federal Rule of Civil Procedure 56(d),[9] to allow more discovery. Instead, he alleged (without any supporting documentation), only that Community did not default on the obligations, that

---

[7] Dickson was incarcerated.

[8] Dickson alleged that Borg failed to account for two repayments made in 2006 and 2007. Because Borg based her affidavit on amounts the parties agreed Community and Dickson owed as of 2010, these allegations are irrelevant.

[9] "When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: . . . (2) allow time to obtain affidavits or declarations or to take *discovery* . . . ." FED. R. CIV. P. 56(d).

No. 15-60683

Borg made errors, and that Borg was unqualified to calculate his guarantor liability. Cunningham's affidavit, which contained only another set of allegations that Borg had failed accurately to calculate Community's and Dickson's obligations, is insufficient to preclude summary judgment. *See Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). Even supported by Cunningham's identical averments, Dickson's affidavit amounts only to "[c]onclusional allegations and . . . unsubstantiated assertions," which "do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002).

AFFIRMED.