**LLOYDS INV. CO., Inc., et al. v. STATE.**
No. 11300.

Court of Civil Appeals of Texas. Galveston.
Dec. 11, 1941.

Rehearing Denied Jan. 29, 1942.

J. B. Lewright, of San Antonio, for appellants.

Chas. O. Betts and Smith & Pollard, all of Austin, for Sam McCorkle, receiver.

GRAVES, Justice.

This appeal is from an order of the 98th District Court of Travis County in the nature of a final judgment—approving the "Third Partial Report" and findings of the Master in Chancery in receivership cause No. 61,546, The State of Texas v. Lloyds America et al., in the Matter of the Claim of Lloyds Investment Company, Inc., and Elliott Jones, Assignee and Intervenor, v. The Estate of Lloyds America, in Receivership, Claim.

Such order bore date March 1, 1941, and disallowed, as against such receivership, the seasonably filed proof-of-claim therein of these appellants, Lloyds Investment Company, Inc., and its assignee, Elliott Jones, for a total alleged indebtedness of $209,121.40 against Lloyds America, to the extent of allowing only $16,113.-17 thereof, together with a conditional $2,370 more, dependent upon the successful outcome of a suit by the receiver, then pending, to recover that amount; it further denied in toto all prayed-for preferences in the payment of such sums.

In the consideration of this appeal, it is deemed unnecessary to recite the proceedings leading up to, nor even the reaches of, the receivership; suffice it to say, that the State in that proceeding had taken possession for liquidation purposes of the institution therein designated as "Lloyds America", an organization of numerous individuals, designated Underwriters, organized and operating under the Lloyds plan of insurance as authorized by Chapter 19, Title 28, R.C.S. of 1925, Vernon's Ann.Civ.St. Art. 5013 et seq., engaged in the insurance business in Texas.

The trial court heard full evidence from both sides, and then, in the appealed-from order, approved the Master's "Third Partial Report", together with his findings appended thereto, confirming and adopting the same as the judgment of the court upon appellants' claims herein.

Preliminarily to discussion of appellants' attacks thereon, it is thought the Master's most material findings may, in substance, be summarized this way:

"1. Each Underwriter at Lloyds America executed a contract agreement and power of attorney, appointing a named person to act as his attorney-in-fact to transact an insurance business in the Underwriters' behalf.

"2. Each such agreement contained provisions authorizing the attorneys-in-fact of Lloyds America to deduct as their compensation for services ten per cent of the amount of net premiums (gross premiums less return premiums on cancellations) upon policies written by Lloyds America.

"3. Each such agreement also authorized the attorney-in-fact of Lloyds America to pay all necessary expenses from subscribers' funds, and specifically authorized the attorney-in-fact to use ten per cent of the total amount of all subscriptions of Underwriters at Lloyds America for organization expenses; however, that said ten per cent should not be deducted or retained by the attorney-in-fact, 'save and except when and as the account of the Underwriter shall be liquidated and/or closed, whether upon withdrawal, retirement, or otherwise.'

"4. The right of the attorney-in-fact to receive as compensation ten per cent of the net premiums and to use ten per cent of the Underwriters' subscriptions as organization expenses, was irrevocably assigned by the attorney-in-fact to Lloyds Investment Company, Inc., by written assignment prior to January 21, 1930, such assignment being re-affirmed by the contract dated January 21, 1930, between Lloyds Investment Company, Inc., and Elliott Jones, the attorney-in-fact for Lloyds America.

"5. On March 20, 1930, Elliott Jones, as attorney-in-fact for Lloyds America, executed and filed with the Insurance Commission of Texas a written agreement, waiving and deferring the right to collect ten per cent organization expenses from the Guaranty Fund of Lloyds America, a copy of which was contained in the exhibit filed with the Master's Third Partial Report upon the claims of appellants.

"6. On December 10, 1930, Elliott Jones, as attorney-in-fact for Lloyds America, and Lloyds Investment Company, Inc., entered into a written agreement waiving and deferring the right to collect ten per cent organization expenses from the Guaranty Fund of Lloyds America, a copy being contained in the exhibit filed with the Master's Third Partial Report; and such agreement was ratified

by the Board of Directors of Lloyds Investment Company, Inc.

"7. The contract of December 10, 1930, was never revoked, but both the attorney-in-fact for Lloyds America and Lloyds Investment Company, Inc., represented to the Insurance Commission of Texas, and to the insuring public, that it was a valid and subsisting contract; and both parties to the contract acquiesced in and operated thereunder for nearly ten years after its execution, until Lloyds America was placed in receivership.

"8. The Elliott Jones, who executed the written agreements of March 20, 1930, and December 10, 1930, as attorney-in-fact for Lloyds America, is the same person who is the assignee of the claim of Lloyds Investment Company, Inc., and he is the real party in interest herein.

"9. Practically the entire income of Lloyds Investment Company, Inc., was derived from the agreed percentage of net premium income, and the ten per cent organization expense previously assigned to the Investment Company by the attorney-in-fact for Lloyds America; the prosperity of Lloyds Investment Company, Inc., being dependent upon the prosperity of Lloyds America; and since Lloyds America was placed in receivership, the Investment Company has ceased doing an active business, its sole remaining asset being its claim filed herein.

"10. The total credits due to Lloyds Investment Company, Inc., from ten per cent premium commissions is $109,841.39, and from liquidation of Underwriters' contracts for organization expenses is $17,-373.87, and from miscellaneous credit items is $658.97.

"11. The total payments upon these items made to Lloyds Investment Company, Inc., by Lloyds America, from January 1, 1935, to March 17, 1939, when the receiver was appointed herein, is the sum of $123,-792.38, leaving a' balance due to Lloyds Investment Company by Lloyds America on March 17, 1939, the sum of $4,081.85.

"12. The note executed by Lloyds America to Lloyds Investment Company, Inc., in the principal amount of $11,568.-58, together with interest thereon to March 17, 1939, aggregating the total sum of $12,031.32, is a valid obligation against the receivership estate in such amount.

"13. The amount due ·on the $3,000.00 note, being the sum of $2,370.00, is approved in accordance with the stipulation recited in the Master's Third Partial Report.

"14. There were no funds of any character on hand ˙in the receivership estate, when the receiver was appointed.

"15. There was no trust account ever set up on the books of Lloyds America for the ten per cent organization expense items contained in the claims of the Investment Company and Elliott Jones, assignee.

"16. With three exceptions, no settlements made with Underwriters by the attorney-in-fact for Lloyds America upon liquidation of Underwriters' accounts prior to the receivership was in a sum in excess of the actual policy losses chargeable to such accounts; and the excess amounts collected in the three exceptions were considered by the Master in making his findings.

"17. When making settlements with Underwriters, authorized by the Court, in no instance has the receiver collected from any liquidating Underwriter a sum exceeding the net policy loss sustained by the Underwriter; and the receiver has not collected any part of the ten per cent organization expense item alleged by claimant to have been due from individual Underwriters to Lloyds Investment Company, Inc., or Elliott Jones, assignee."

As against those findings, as well as the Master's action upon them, as given supra, the appellants present here for review these points:

"The trial court erred in these respects:

"1. In upholding the action of the Master in Chancery in refusing to give priority of payment to the item of $17,-373.87, the amount found in paragraph 10 of the findings of fact made by said Master as 'the total proper credit due to Lloyds Investment Company, Inc., by reason of liquidation of underwriters' contracts and on account of what is termed "organization expense" ';

"2. In upholding the action of the Master in Chancery in his finding that the amount of $16,113.17, although a just claim in favor of appellants, is not entitled to priority of payment over ordinary, unsecured creditors of Lloyds America;

"3. In upholding the action of the Master in Chancery in finding that the receiver of Lloyds America 'has not collected any part of the ten per cent (10%) organization expense alleged by claimant herein to

have been due from individual underwriters to Lloyds Investment Company, Inc., or Elliott Jones, as assignee;

"4. In sustaining the action of the Master in Chancery in refusing, or in any event in failing, to find that the receiver of Lloyds America is justly indebted to appellants in the sum of $14,828.21, same representing and covering the total of sums collected and received by said receiver up to January 10, 1941, on and for account of the 10% (for expenses of organization of Lloyds America) payable by every underwriter at Lloyds America upon withdrawal or upon final liquidation of its affairs;

"5. In sustaining the action of the Master in Chancery in refusing to find that these appellants are entitled to recover of and from the receiver, as a preferred claim, the sum of $4,215.42, as appellants' just and pro rata part of the amount actually collected and received by the receiver in his compromises and settlements with various underwriters, prior to January 10, 1941."

None of these contentions, it is thought, should be sustained.

If the quoted findings, which are those of both the court and the Master in Chancery, after each had heard not only the evidence but the law and arguments of counsel in reaching them, are supported by the evidence—as this court finds them to be—just how any of the stated assignments of appellants against them can be upheld does not readily occur; indeed, the appellants seem to resort to a construction of the contracts involved, rather than what was done by the parties under them, for support of their position that the Master's findings cannot be upheld. For instance, throughout their arguments they insist repeatedly that the attorneys-in-fact for the underwriters at Lloyds America had assigned to appellant Company 10% of the subscription of each underwriter at Lloyds America authorized to be used for organization-expenses; from that premise, they then deduce that thereby the 10% organization-expense fund became a trust or became earmarked and set apart for the use and benefit of appellant Company exclusively, to the extent that not even the court had any control or jurisdiction over it.

■ Neither the contracts involved, nor the other evidence heard, seem to this court to support such a claim; to the contrary, the first of them, that is, the one of March 15 of 1928, between Worley & Campbell, on the one side, and Lloyds America, Inc. (predecessor of appellant Company), evidenced merely the assignment by those two individuals of their personal rights to receive as compensation 10% of the net-premiums on policies written by the underwriters at Lloyds America, they receiving in return, as their personal property, 1,000 shares of stock in Lloyds America, Inc., the other party thereto; that contract does not appear, either expressly or by implication, to make any assignment of the right to use 10% of the underwriters' subscriptions authorized to be used for organization-expenses.

■ Next was the contract of January 21 of 1930, between appellant, Elliott Jones, and appellant Company (successor to Lloyds America, Inc.); it, too, was executed by Elliott Jones in his individual or personal capacity, although he then appeared to be the attorney-in-fact for the underwriters at Lloyds America, in succession to Worley & Campbell in that position.

That contract cancelled the preceding one of March 15 of 1928, and under it Elliott Jones, in his personal capacity, assigned to appellant Company his individual right to the "net profits and income which he had or would receive as compensation for his services as attorney-in-fact for the underwriters at Lloyds America"; that "net profit and income" was expressly recited to be the personal compensation he might receive from 10% of the net-premiums of policies issued by the underwriters at Lloyds America. Likewise, nowhere in this contract, either, is it in any way provided that there was assigned, or was attempted to be assigned, to the appellant Company any interest in or right to use the 10% of the subscriptions of underwriters, which might be retained and used for organization-expenses.

■ Then comes the contract of December 10 of 1930 between Elliott Jones and the appellant Company; it apparently reflects that appellant Company—as concededly it did with reference to the 10% net-premiums assigned to it and its predecessor under preceding contracts—likewise occupied the position of a mere general creditor of Lloyds America as to the moneys advanced by it to the attorneys-in-fact for Lloyds America for organization-expenses; for instance, it recites that Lloyds America had become liable to ap-

pellants' predecessor for $239,300, with credits thereon of $55,347.11, leaving an $183,882.89 indebtedness, which had been charged against Lloyds America on the books of both parties.

Obviously, it is thought, these recitations do not support appellants' contentions that there had been assigned to them the title to and vested interest in the 10% of the subscriptions of each underwriter authorized to be used for such organization-expenses.

Moreover, that December 10th contract, upon its face, expressly recited that the subscriptions of underwriters—that is, the whole of them—constituted the Guaranty Fund of Lloyds America, which lay back of all its business, and that appellant Company waived its right to collect its debt from 10% of those subscriptions, under stated conditions, in these recitations: "Lloyds Investment Company, Inc., waives right to collect ten per cent (10%) of the amount of the Underwriters Subscriptions (which constitute the Guaranty Fund back of all Insurance Policies) as stipulated in Article Eight of the Underwriters Agreement, until such time as an Underwriter withdraws, or in event of liquidation, and in no event shall this amount be credited to Lloyds Investment Company, Inc., on the books of the Underwriters at Lloyds America until actual withdrawal or liquidation takes place."

It was thus mutually recognized that thereafter there would be no liability upon attorneys-in-fact for Lloyds America to repay appellant Company for moneys it had advanced for such organization-expenses, but that such attorneys should only try to collect from retiring underwriters their pro rata parts of such advancements, and that these collections should belong and be paid to that appellant; since the quoted findings of both the Master in Chancery and the court show, at least by sufficient evidence, not only that all such collections as made had been so paid and credited, but also that, when the receiver of the defunct concern took charge, there were no funds whatever belonging to it on hand, and, further, that he had not thereafter collected from any retiring underwriter any amount in excess of his policy-losses, all maintainable support for appellant's contrary positions seems to disappear.

The report and findings in this instance having come so accredited from the dealings and the contracts on which they were rested, and having been approved by the court itself, there being further no countervailing evidence in the record, to say the least of it, they were not alone equivalent to the special verdict of a jury, but should be given the force and effect of a final judgment, carrying on appeal all the usual presumptions in favor of the court's action. 36 Tex.Jur., 287, 289, 290; 36 Tex.Jur., 253, 254; 36 Tex.Jur., 703.

It seems equally clear, under our authorities, that no constructive nor resulting trust—such as appellants' claim—can properly be considered to have arisen as a result of these various transactions and agreements between Lloyds America and the appellants, under the facts and findings so appearing. 42 Tex.Jur., 686-687; 42 Tex.Jur., 744; Tyler County State Bank v. Shivers, Tex.Com.App., 6 S.W.2d 108, affirming Tex.Civ.App., 281 S.W. 264.

Whether or not the legal consequence of the actual and contractual relations between these parties was to cast individual or personal liability to appellants upon each of these underwriters, for his pro rata part of the organization expenses debt, is a question not properly involved upon this appeal, hence is not decided.

The trial court's judgment will be affirmed.

Affirmed.